530 So.2d 1348 (1988)
CITY OF JACKSON, Mississippi
v.
Dennis FROSHOUR.
No. 57849.
Supreme Court of Mississippi.
August 24, 1988.
*1349 Paul O. Miller, III, W. Thomas Siler, Jr., Susan D. Fahey, Miller, Milam & Moeller, Jackson, for appellant.
E.P. Lobrano, Jr., Jackson, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
HAWKINS, Presiding Justice, for the Court:
The City of Jackson has appealed the judgment of the circuit court of the First Judicial District of Hinds County reversing the order of the Civil Service Commission of Jackson affirming the City's discharge of Dennis Froshour, and directing that he be reinstated as an employee of the Jackson Police Department.
We find that the order of the Civil Service Commission was based upon substantial evidence, was made in good faith for cause, and therefore reverse the judgment of the circuit court and reinstate the order of the Commission.

FACTS
The seed from which this case eventually developed grew from a domestic dispute between Kenneth Fike (Fike) and his estranged wife Connie. The Fikes' marriage had lasted approximately four and one-half years, during which there were many separations during which divorce was contemplated. The last separation occurred in July of 1985 when Connie moved out taking the Fikes' three and one-half-year-old son. On the night of October 29, 1975, Fike followed Connie to her friend's house and threatened Connie with a shotgun as she was getting out of her car. Fike pointed the gun at Connie's head and asked if she was ready to die. Observing neighbors called the police, and one neighbor forced Fike to leave. Later that night he checked himself into the Veterans Administration Hospital (the VA) in Jackson. Fike spent four days at the VA, where he was given mild sedatives and was monitored by hospital personnel.
Because Connie could not get the police in the appropriate precinct to allow her to file charges against Fike, she consulted Police Sergeant Burton, who worked in another precinct, to take an offense report. Sergeant Burton was assisted on that day by Officer Froshour.
After Fike's four days' stay in the VA Hospital, through counseling by Hinds County Deputy Sheriff Hal Morris, a personal friend of Fike's, Fike requested to be released from the VA. Fike was told by the doctor that because he was still upset and nervous he should not be released. Fike was, however, eventually released after the doctor told Fike that he would have to be released into custody of the Jackson Police Department. Because Froshour had accompanied Sergeant Burton in the investigation, when the arrest warrant was issued, it went to Froshour to make the arrest. Froshour then traveled to the security captain's office in the VA to arrest Fike. Upon arrival, Froshour frisked Fike and placed him in handcuffs behind his back. Froshour then escorted Fike through the emergency room and out in the parking lot to Froshour's car. Fike then complained to Froshour about the handcuffs being too tight. From this point forward Fike's and Froshour's stories, although somewhat similar, become different.

FIKE
Fike stated that Froshour then tightened the handcuffs even tighter. Froshour opened the back door of the police car and shoved Fike into it. Then as Froshour cranked the car, he began telling Fike how he was going to beat him up and show him what it was like to point a gun at a woman's head. Froshour drove "wild", running yellow lights and cursing Fike. Froshour stopped on the way to the police station at the police garage where Froshour cursed the mechanic, stating that he needed to fix the car. Froshour then jumped back into the car and drove to the city jail. Froshour pulled the car into the back of the parking *1350 garage. He got out of the car, opened the back door and grabbed Fike by the handcuffs. He jerked Fike out of the car by his left arm and told him to stand by a certain door. Fike saw Froshour pull some black gloves out of his jacket and put them on. Fike then tried to turn a door knob on the door where he was standing, but it was apparently locked. Froshour approached Fike cursing and began hitting and kicking Fike, knocking Fike to the ground. Froshour then continued stomping and kicking Fike. At this point Froshour pulled out his pistol from his holster and struck Fike on the side of the head about five or six times. Fike was then escorted by Froshour to a small room where Fike was unhandcuffed and again kicked against the wall by Froshour. Fike further testified that Froshour stated, "You want my name and you want my badge number?[1] Nobody would believe this. You just come off a nut ward. Nobody is going to believe nothing you say or anything."
Fike went on to testify that he just sat in the cell with his ribs and back hurting. Someone came in to sweep and Fike told him that he had just been beaten up by a police officer and needed help, which Fike said was ignored. Later, after Froshour had left, another detective brought in a prisoner and Fike once again repeated that he had been beaten up by a police officer and needed help. The officer told Fike that because of police policy the arresting officer would have to take him back to the hospital. Fike, believing that he would be beaten up worse, declined to be taken back to the hospital by Froshour. Once Fike was taken upstairs, he requested to phone Deputy Sheriff Morris. Shortly thereafter Deputy Morris arrived and was allowed to transport Fike back to the VA. There Fike was examined, x-rayed and given aspirin. Fike then was returned to the city jail. The VA medical record notes that the physical examination of Fike following his arrest showed multiple contusions. There was some bruising, or petechiae, noted on his trunk, right and left lower chest, and left flank. His lower lip was cut and bruised.
Around the second day of Fike's incarceration, investigators from Internal Affairs talked with him and took pictures. Connie's charges against Fike had been dropped as part of the divorce proceedings which became effective that day or the day before. Fike, however, remained in jail for violation of his three-year probation of a Florida conviction for arson. Once the Florida officials found that Fike's arrest stemmed from a domestic problem, Fike was released.

FROSHOUR
Froshour's account of what happened after Fike complained about the tight handcuffs was that most arrestees complain about the handcuffs. Froshour went on to testify that he checked the chains and could slip the cuffs up and down on Fike's wrist, and were not too tight. As Froshour and Fike approached the vehicle, Fike questioned Froshour concerning the warrants. Froshour stated that because of the people watching, he would discuss it with him only in the car. Froshour then opened the door to the car and asked Fike to sit down. Fike would not, and he then reached behind Fike's head and put his knee in Fike's stomach and bent him down into the seat of the car. Once both individuals were inside the car, Fike started cursing Froshour, and saying he would get even with him. Fike continued cursing and accusing Froshour of having a personal vendetta toward him. Froshour stated that he did stop at the garage to pick up his paperwork which was in his usual patrol car which was being repaired, but proceeded to the city jail. Finding no parking place, he parked in a place belonging to one of the deputy chiefs. He opened the door to let Fike get out. Because Fike would not exit the car, Froshour reached in, grabbed Fike's leg and turned him, at which point Fike kicked at Froshour. Froshour then grabbed Fike by the hair of the head and pulled him out of *1351 the car. Then he told Fike to stand still while he got the paperwork out of the car. Fike, however, began walking away around the front of the car. After Froshour got his paperwork out of the car, he walked down to retrieve Fike from near the corner of the garage. Froshour maintained that he and Fike could be seen by anyone coming into the garage at any time. Froshour grabbed Fike, turned him around, "jacked" the handcuffs up to immobilize Fike, and started bringing him back. When Fike tried to spit on him, Froshour popped him with his open hand "with papers in it" to Fike's mouth area. Froshour further stated that Fike stomped his foot on which he had recently had minor surgery.

CITY INVESTIGATION
Froshour was interviewed several times by the City's Internal Affairs Division. The first interview was the day after Fike's arrest and was conducted by Sergeant J.L. Covington. When asked by Covington if he had struck Fike, Froshour denied it. In his testimony Froshour explained this answer by stating that he thought Covington meant had he hit Fike with his fist or a club, and his slapping Fike with his open hand (holding papers) did not register with him. A second interview was conducted on November 6, 1985, at approximately 8:24 a.m. by Sergeant Covington, primarily to inform Froshour that he might need to submit to a polygraph examination. A polygraph examination was subsequently conducted by William B. Inman, Jr., around 11:00 that morning. On the afternoon of the next day, Froshour was interviewed by Chief of Police L.C. Smith concerning discrepancies between the initial interview with Sergeant Covington and statements made to the polygraph examiner. Froshour was then immediately sent to Sergeant Covington to explain the discrepancies. During this interview when asked if he had lied on the polygraph, Froshour refused to answer. Subsequently the chief of police was called to order an answer from Froshour. Based on Froshour's continued refusal, the chief suspended him.
Froshour was later sent a letter of intent to dismiss and offered a pre-termination hearing. On November 25, 1985, Froshour was terminated and given notice that he had a right to appeal to the Commission within ten days. Froshour did appeal to the Commission which held a hearing on January 30, 1986, before Gene A. Wilkinson, chairman, William K. Dease and Jacqueline Povall. At the conclusion of the hearing, the Commission took the matter under advisement. An opinion was subsequently rendered on February 13, 1986.
The Commission's order first noted that Froshour's termination letter notified him that: the police department had found his and Fike's statements conflicted and that his answers were evasive; both parties submitted to a polygraph examination; and that Froshour had admitted to "lying to the polygraph examiner, but refused to answer which questions" he had "lied about," and even after he received an order of the chief of police to answer the question. This constituted insubordination. Froshour was also notified that he was not truthful when he told Internal Affairs that he did not strike Fike; that he in fact kneed and struck Fike more than once. The letter went on to note that Froshour's file contained more complaints than any other officer of the police department, and of nineteen complaints against him, eleven had been for brutality.
The letter further noted that Froshour had admitted to "popping" Fike more than once, pulling his hair, and kneeing him, all while he was handcuffed. The letter concluded that Froshour's insubordination, refusal to cooperate in the investigation, brutality and dishonesty would no longer be tolerated.
The Commission order further found that Froshour physically assaulted Fike when the latter was handcuffed, that bruises had been noted on Fike's wrists, trunk, abdomen and back, and that Fike had a swollen lower lip with a cut on the inside.
The order further noted that while Froshour at the hearing had denied striking Fike other than with the back of his hand, he had admitted to the polygraph examination that he had struck Fike in the *1352 stomach with his knee, and "rabbit punched" him several times in the back and stomach. The order then contained the following sentence:
Moreover, given the circumstances immediately leading up to his arrest, there is no indication of any motivation for Mr. Fike to lodge an unfounded complaint against Officer Froshour or resist arrest.
The order found that the police department's decision to discharge Froshour was supported by the facts.
The Commission rejected Froshour's contention that the police department's requirement that he submit to a polygraph violated his constitution rights, but found in any event that his admission to the polygraph examiner was made prior to the examination.
The Commission did not rule on Froshour's contention that his Fourteenth Amendment rights had been violated by the police department's using the polygraph results in terminating his employment, because the Commission found there was no evidence the department had used the examination's results in deciding to terminate him. The Commission found, moreover, that there was substantial evidence supporting the department's decision regardless of the polygraph results.
The order concluded:
IT IS THEREFORE, the opinion of this Commission that the City of Jackson has convincing evidence to support the dismissal of Officer Froshour and that he was not dismissed for political or religious reasons. The Commission therefore affirms the findings of the appointing authority of the City of Jackson.
Froshour appealed to the circuit court of the First Judicial District of Hinds County, claiming:
1. The verdict of the commission was manifestly wrong, or that the city had filed to establish its case by conclusive evidence.
2. That the city had violated his constitutional rights by threatening to discharge him if he refused to execute a waiver of his Fifth Amendment rights preliminary to taking a polygraph examination.
3. That his Fourteenth Amendment due process rights had been violated.
The circuit judge on September 29, 1986, by a memorandum opinion reversed the Commission's order, and a judgment directed that Froshour be reinstated was entered October 8, 1986.
The circuit judge's opinion quoted the above sentence from the Commission that Fike had no motivation to lodge an unfounded charge, and found:
This finding is erroneous. By even a cursory review, the record is replete with evidence that Fike was untruthful and that he had a propensity to be violent; certainly a mere indication of such motivation exists within the record.
It is well-established that the Commission may consider and then reject the controverted evidence offered by Froshour, but for the Commission to make a finding that evidence does not exist within the record when, in fact, such evidence does exist is a blatant failure to the Commission to provide a good faith review
The circuit judge's opinion further stated:
The Commission's Order further states:
Evidence presented at the hearing convincingly indicates that the police department's decision to dismiss Officer Froshour was supported by the facts and leaves us with no alternative but to affirm the City's decision.
There is no indication by the Commission's Order as to what the additional facts are which compelled it to affirm Froshour's dismissal.
The City in turn has appealed the circuit court judgment directing that Froshour be reinstated.

LAW
Miss. Code Ann. § 21-31-21 provides:
§ 21-31-21. Tenure of office and grounds for discipline.
The tenure of everyone holding an office, place, position or employment under *1353 the provisions of sections 21-31-1 to 21-31-27 shall be only during good behavior. Any such person may be removed or discharged, suspended without pay, demoted or reduced in rank, or deprived of vacation privileges or other special privileges, or any combination thereof, for any of the following reasons:
Incompetency, inefficiency, or inattention of duty; dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public or a follow employee, or any other act of omission or commission tending to injure the public service.
Miss. Code Ann. § 21-31-23 is a lengthy statute setting forth the procedure for disciplinary action against an employee. In pertinent part it provides:
§ 21-31-23. Removal, suspension, demotion, and discharge.
No person in the classified civil service ... shall be removed, suspended, demoted or discharged, or any combination thereof, except for cause, and only upon the written accusation of the appointing power or any citizen or taxpayer, a written statement of which accusation, in general terms, shall be served upon the accused, and a duplicate filed with the commission. The chiefs of the fire and/or police department may suspend a member pending the confirmation of the suspension by the regular appointing power, which shall be within three (3) days.
In the absence of extraordinary circumstances or situations, before any such employee may be removed or discharged, he shall be given written notice of the intended termination, which notice shall state the reasons for termination and inform the employee that he has the right to respond in writing to the reasons given for termination within a reasonable time and respond orally before the official charged with the responsibility of making the termination decision. Such official may, in his discretion, provide for a pretermination hearing and examination of witnesses, and if a hearing is to be held, the notice to the employee shall also set the time and place of such hearing. A duplicate of such notice shall be filed with the commission. After the employee has responded or has failed to respond within a reasonable time, the official charged with the responsibility of making the termination decision shall determine the appropriate disciplinary action, and shall notify the employee of his decision in writing at the earliest practicable date.
* * * * * *
Any person so removed, suspended, demoted, discharged or combination thereof may, within ten (10) days from the time of such disciplinary action, file with the commission a written demand for an investigation, whereupon the commission shall conduct such investigation. The investigation shall be confined to the determination of the question of whether such disciplinary action was or was not made for political or religious reasons and was or was not made in good faith for cause. After such investigation the commission may, if in its estimation the evidence is conclusive, affirm the disciplinary action, or if it shall find that the disciplinary action was made for political or religious reasons, or was not made in good faith for cause shall order the immediate reinstatement or reemployment of such person in the office, place, position, or employment from which such person was removed, suspended, demoted, discharged or combination thereof, which reinstatement shall, if the commission so provides in its discretion, be retroactive, and entitle such person to pay or compensation from the time of such disciplinary action... . [Emphasis added]
All investigations made by the commission pursuant to the provisions of this section shall be by public hearing, after reasonable written notice to the accused of the time and place of such hearing, at which hearing the accused shall be afforded an opportunity of appearing in person and by counsel, and presenting his defense. The findings of the commission shall be conclusive and binding unless either the accused or the municipality *1354 shall ... appeal to the circuit court of the county within which the municipality is located. Any appeal of the judgment or order of the commission shall not act as a supersedeas of such judgment or order, but the judgment or order shall remain in effect pending a final determination of the matter on appeal. Such appeal shall be taken by serving the commission and the appellee, within thirty (30) days after the entry of such judgment or order, a written notice of appeal, stating the grounds thereof, and demanding that a certified transcript of the record and of all papers on file in the office of the commission affecting or relating to such judgment or order, be filed by the commission with such court. The commission shall, within thirty (30) days after the filing of such notice, make, certify and file such transcript with such court. The said circuit court shall thereupon proceed to hear and determine such appeal. However, such hearing shall be confined to the determination of whether the judgment or order of removal, discharge, demotion,, suspension or combination thereof made by the commission, was or was not made in good faith for cause, and no appeal to such court shall be taken except upon such ground or grounds. [Emphasis added]
This Court has had several occasions to interpret the above sections and their predecessors. We briefly recapitulate.
This Act removes from municipalities the unrestricted power to discharge employees covered by it, and creates in such employees a valuable property right. Little v. City of Jackson, 375 So.2d 1031 (Miss. 1979); City of Meridian v. Davidson, 211 Miss. 683, 53 So.2d 48 (Miss. 1951).
The due process clause of the Fourteenth Amendment requires that "risk reducing procedures" be accorded a covered municipal civil service employee to afford him ample opportunity prior to discharge to know the reasons he is being discharged and that he be given an effective opportunity to rebut them. Little v. City of Jackson, supra. The present statute sets forth such a procedure, and no contention is made on this appeal that Froshour was not given an ample opportunity to protect such rights.
The function of the civil service commission is to investigate and determine whether the disciplinary action taken by the city "was or was not made for political or religious reasons and was or was not made in good faith for cause." If the commission finds the evidence is conclusive that the disciplinary action was not for political or religious reason and was made in good faith for cause, it is required to affirm the city's action. Miss. Code Ann. § 21-31-23; Scott v. Lowe, 223 Miss. 312, 78 So.2d 452 (1955).
Either the city or the employee may appeal the commission's decision to the circuit court. Such an appeal is the exclusive remedy. City of Jackson v. Thomas, 331 So.2d 926 (Miss. 1976); Scott v. Lowe, supra; and the circuit court sits as an appellate court. City of Gulfport v. Saxton, 437 So.2d 1215 (Miss. 1983). The appeal must be based upon a transcribed record of the proceedings before the commission. Stegall v. City of Meridian, 230 Miss. 176, 92 So.2d 331 (1957); City of Meridian v. Davidson, supra.
Upon appeal, the circuit court is confined to a determination of whether the action taken by the commission "was or was not made in good faith for cause." Miss. Code Ann. § 21-31-23. In City of Meridian v. Davidson, supra, we analyzed the circuit court's function and held:
That is to say, the circuit court would not be permitted to determine the guilt or innocence of the employee of the charge or charges against him, since the fact that the circuit court may disagree with the commission as to the guilt or innocence of the employee would no more necessitate a finding that the commission had not acted in good faith and on the basis of what reasonable men could deem a sufficient cause than our disagreement with the conclusion of a chancellor on an issue of fact would impute bad faith to him. The fact that we may think the weight of the evidence is contrary to his *1355 finding does not even require a reversal unless he is manifestly wrong and furnishes no basis in itself alone for an inference of bad faith on the part of the trier of the facts, whether an executive or administrative agency, a jury or a trial judge.
* * * * * *
... And it was further stated that the only sound, practicable or workable rule that can be announced is to hold that the court to which the appeal is taken from an administrative agency shall only inquire into whether or not the judgment appealed from is reasonable and proper according to the facts disclosed before the board that is to say whether or not its decision is supported by substantial evidence or is arbitrary or capricious, etc. or in other words whether or not it was made in good faith for cause. [Emphasis original]
211 Miss. at 693, 695, 53 So.2d at 52, 53.
In City of Meridian v. Hill, 447 So.2d 641 (Miss. 1984), we quoted the above language from Davidson (447 So.2d at 643-644) and also stated:
On appeal here, the question before us is whether or not the action of the Civil Service Commission was in good faith for cause. Intertwined with this question is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether it is arbitrary, unreasonable, confiscatory, and capricious.
447 So.2d at 643. Also, Eidt v. City of Natchez, 421 So.2d 1225, 1231 (Miss. 1982); City of Jackson Police Dept. v. Ruddick; 243 So.2d 566 (Miss. 1971); City of Hattiesburg v. Jackson, 235 Miss. 109, 108 So.2d 596 (1959).
It is thus clear that the scope of review of the circuit court, and of this Court, is limited, and we must ever bear in mind that it is not what the court, had it been a member of the governing authority, might have done in a particular instance, or indeed whether or not the court thinks a mistake may have been made, but instead the criterion is whether or not from an examination of the record there exists credible evidence substantiating the action taken by the city. It is upon this basis that the court determines whether or not the decision was in "good faith for cause." Courts are not empowered to supervise the intelligence, wisdom or fairness of the governing authorities, and no resources are available to a court to exercise such a function even if granted, in this extremely difficult task of determining the fitness of a particular person for a particular job. The task must be left to the governing authorities of the city. It is only when the record makes it clear that there is no "substantial evidence" supporting the governing authorities' determination that a court can act, and in such case it must.
From this record we must accord full faith and credit to the action taken by the Jackson Police Department and the Commission. The Commission's order affirming the city's action was supported by substantial evidence.
We agree with the circuit judge that a Commission is under a duty to set forth with sufficient clarity and specificity the reason it is upholding the action taken by the city, as well as it is the duty of the city to set forth clearly the reasons for its disciplinary action. In this case this Court may or may not have been more specific than was the Commission, but the Commission gave a sufficiently clear analysis and reason it was affirming the action of the city. City of Jackson v. Little, supra.
We therefore reverse and render and judgment of the circuit court and reinstate the order of the Commission.
JUDGMENT OF THE CIRCUIT COURT REVERSED AND RENDERED; ORDER OF THE COMMISSION REINSTATED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
NOTES
[1] It was related by Froshour's counsel at oral argument that Jackson Police officers have no badge number.