BANKS, Justice,
for the court:
I.'
Darryl Johnson, an employee of the City of Meridian for approximately two years as an Electronics Technician performing work at the Wastewater Treatment Plant, was reassigned to the position of Electrician I in the maintenance division within the same public works department. In this new position, his rate of pay was the same, his benefits were the same, and according to the City, his employment level was the same. Nevertheless he challenged his reassignment as a demotion achieved in violation of City’s civil service rules. The Civil Service Commission agreed with Johnson and ordered his promotion. The Circuit Court of Lauderdale County affirmed. Finding that the Civil Service Commission exceeded its authority, we reverse and render.
II.
Johnson’s reassignment came as a result of an audit of his job position conducted by the City. Ironically, the reason for the audit was that Johnson had requested that his position be upgraded to that of Electrician II. That request was transmitted in writing to the City’s Chief Administrative Officer, Bob Klimetz and its personnel manager, Gary Matlock on November 9, 1987. On November 20, the City’s equal opportunity officer, Rita Redmond, reported that she had met with Johnson and ascertained that the duties being performed were not those for which he was hired. Redmond recommended that Johnson’s job description be modified. In a memo to Redmond and Matlock on November 30, Klimetz directed that the audit be conducted. The audit was conducted by Matlock. The conclusion reached was that not only was Johnson not performing the duties of an Electrician II, but there were insufficient duties for an Electronics Technician or an Electrician I.
It seems that when Johnson was hired it was contemplated that a computer would be acquired for the treatment plant and that Johnson would be primarily responsible for servicing the computer circuitry. Thus a job classification was established to reflect those duties. It developed that the computer at the Wastewater Treatment Plant was never put into operation and the need for an Electrician Technician never arose. Matlock’s report of the audit to *37 Klimetz, recommended that Johnson’s job as Electrician Technician be eliminated. Redmond, the public works department head and the chief operator of the Waste-water Plant concurred in the recommendation.
On February 15, 1988, Klimetz, in turn, recommended to the mayor that the Electronics Technician position be eliminated and that every effort be made to find a suitable position for Johnson with the City. This recommendation was approved by the mayor on February 24, 1988. At some point, Johnson was reassigned to the maintenance division. This likely occured in January, immediately after the audit but before all reports and recommendations had been acted upon.[1] Johnson met with the Commission informally on February 10, to complain about the assignment. He was advised to seek counsel and bring a grievance through regular channels. It is not readily ascertainable from the record or the briefs, but apparently, Johnson did just that resulting in initial proceedings before the Commission on July 27,1988 and a final hearing in December 1988.
By letter dated September 28, 1988, Johnson was made aware the fact that the Electronics Technician position had been eliminated effective September 30. He was given the option of being permanently reassigned to the maintenance division with a classification of Electrician I in lieu of termination. Johnson requested that he be placed in an Electrician II position based upon his prior work experience and the duties that he was performing at the treatment plant. It appears undisputed that in the electrical community, an electronics technician is a higher more technical job than an Electrician II. In the City’s pay scale, however, an Electronics Technician is between an Electrician I and an Electrician II.[2]
Following the December hearing, the Commission ordered (1) that Johnson be given a non-competitive promotion test for the job of Electrician II, (2) that if Johnson passed the examination with a grade of 70 or above, the City should reclassify the job being performed by him as Electrician II, and (3) that the City reclassify Johnson’s then current status from that of Electrician I to Electrician II.
The City appealed the January 4, 1989, order of the Civil Service Commission to the Circuit Court of Lauderdale County and, following affirmance there, to this court, asserting that:
(1) The Commission order exceeded the Commission’s authority;
(2) The Commission order is contrary to the weight of the evidence, arbitrary, capricious and unreasonable; and
(3) The Commission order usurps the City’s authority to establish and abolish positions, to establish pay and to administer the pay system for the employees for the City of Meridian.
*38 III.
The Commission, composed of three appointees of the Mayor, is a creature of the legislature vested with limited authority to investigate, conduct hearings, make decisions, and promulgate and adopt its own rules and regulations. Miss.Code Ann. § 21-31-1 et seq. (Rev.1990). The Board of Civil Service Commission of the City of Meridian adopted, on May 30, 1944, rules and regulations which were subsequently approved by the City on June 20, 1944. The City and the Commission are bound by these rules. Bulloch v. City of Pascagoula, 577 So.2d 1234 (Miss.1991).
The City has appealed the Commission order pursuant to Miss.Code Ann. § 11-51-95 (Supp.1991) and § 11-51-93 (1972). This appeal by certiorari is limited to an “examination of the questions of law arising or appearing on the face of the record and proceedings.” Miss.Code Ann. § 11-51-93 (1972); Gill v. Ms. Department of Wildlife Conservation, 574 So.2d 586 (Miss.1990), City of Meridian v. Davidson, 211 Miss. 683, 53 So.2d 48 (1951). The scope of appellate review is limited to an examination of the record to determine whether there exists credible evidence substantiating the Commission’s action— whether the decision of the Civil Service Commission was made “in good faith for cause.” Miss.Code Ann. § 21-31-23 (Rev. 1990); City of Jackson v. Froshour, 530 So.2d 1348 (Miss.1988). “Intertwined with this question is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether it is arbitrary, unreasonable, confiscatory, and capricious.” City of Jackson, 530 So.2d at 1355, quoting City of Meridian v. Hill, 447 So.2d 641, 643 (Miss.1984). We must also determine whether the order in question was within the power of the Commission to make. City of Meridian v. Davidson, 53 So.2d at 54.
In order to prevail on his appeal to the Commission, Johnson had the burden of proving that the City’s action was not in good faith and without cause, and that he was actually demoted rather than reassigned. The Commission found that Johnson had been assigned to duties for which he was not originally employed. It further found that, at times, Johnson was called upon to perform the duties of his supervisor, an Electrician II, in his new job in the maintenance division. Finally it found that the City’s position that Johnson had no complaint because he accepted the position untenable noting that Johnson had clearly accepted under protest. Based upon these findings the Commission concluded that Johnson had been demoted without its permission, which it deemed a prerequisite. As a remedy, the Commission, in effect, ordered procedures leading to a reclassification and promotion. Without doubt, the factual findings of the Commission are supported by substantial evidence. The question then is whether those findings support the actions of the Commission. That is, whether, given its finding that Johnson had been “demoted”, the Commission is empowered to direct that Johnson be promoted to a position he never held where the circumstances of the “demotion” involved the lawful, good faith elimination of Johnson’s former position.
IV.
The Commission sought to justify its decision that Johnson had suffered an improper demotion and its remedy therefor by referring to §§ 3.5, 7.8 and 8.16 of the Rules and Regulations of the Board of Civil Service Commission of the City of Meridian. These sections provide, respectively, for changes in job classification, promotion without examination, and demotions.
The Commission is authorized by § 3.5 to conduct investigations of positions to recommend changes in classification to the City. If a new, higher classification is adopted by the City, the board determines the manner of filling the position. Where a lower classification is assigned, the incumbent is given the option of: (1) transferring to another position of the class enjoyed before reclassification; (2) being laid off; or (3) accepting the same position at the lower classification.
It is apparent that this provision has no application here. There was no reclassifi *39 cation, recommended by the Commission or otherwise. The job which Johnson held was eliminated.
Section 7.8 authorizes the Commission to “permit” promotions without examination. It is clear, however, that such promotions must be initiated by the City. This section does not authorize the Commission to direct a promotion.
The last section to which the Commission refers, § 8.16, is the most nearly applicable to the situation at hand. It provides that the City is required to notify the Commission of a proposed demotion at least fifteen days in advance of the demotion and that such demotion cannot be effective without the approval of the Commission. The City suggests that this section refers only to non-disciplinary demotions and that the Commission’s authority is limited to approval or disapproval. It is true that the civil service rules contain a more detailed scheme for addressing adverse personnel actions, including demotions, for disciplinary reasons. Nothing there, however, precludes the operation of this rule.
More to the point this rule prevents the effectuation of a demotion without the approval of the Commission. If this was, in fact, a demotion then the rule would apply. As the City argues, application of the rule would not, however, authorize the Commission to direct a promotion or reclassification. The effect would be that Johnson would be discharged because his job was eliminated.
The City suggests that the applicable rule is § 8.15. which is as follows:
§ 8.15 Transfer Permitted.
The transfer of an employee from a position to another position of the same class and grade and character of work and the same rate of pay, may be made as follows: (a) within a department by the appointing authority without the approval of the Board. Such transfer shall be called a reassignment; (b) from one department to another department upon request in writing of both appointing authority or department heads concerned. The Board shall afford the employee affected an opportunity to be heard before approving the transfer. Such transfer shall be called an organization transfer.
It is in Johnson’s interest that we accept this suggestion, even though he was not transferred into the same grade. For Johnson, the only options appear to be transfer or lay off. The job and the classification which he enjoyed existed no more. The question, then, is who determines what classification most nearly reflects his previous duties, responsibilities and pay. The rules, unfortunately, do not answer that question. Where the rules do not speak, we must refer to the ultimate authority of the City with respect to its employment decisions. Whatever the City decides in a manner not contrary to its rules or the statutory or constitutional rights of the employee shall be binding.
For Johnson to prevail, he essentially had to show that he was demoted and that such demotion was not in good faith for cause. He proved neither. Under the facts, the City could have terminated Johnson when the only position of Electronics Technician was eliminated. Instead, the City reassigned Johnson to the position of Electrician I at the same pay, and with the same benefits. The Civil Service Commission had no authority within its rules or its statutory grant of power to modify this decision.
V.
Accordingly, the order of the Circuit Court is reversed and judgment is rendered here in favor of the City of Meridian.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., dissents.

. It is not clear just when this reassignment took place. Klimetz put the time as January. It is clear that Johnson filed a charge of discrimination and retaliation in failing to upgrade him to Electrician II, with the federal Equal Employment Opportunity Commission (EEOC) on January 8, 1988. He received an adverse determination of that charge on September 12, 1988. That determination indicated that Johnson complained of a reassignment following a job audit pursuant to his request for a promotion. The EEOC determined that the audit was conducted in accordance with the rules and regulations of the City and that there was no cause to believe that Johnson was the victim of retaliation.
We note that there was considerable discussion whether a charge of racial discrimination and retaliation was within the jurisdiction of the Commission at a July motions hearing before the Commission. The Commission denied a motion to dismiss directed at that claim but proceedings before the Commission were delayed and the record reflects an anticipation that the EEOC would rule on the charge prior to the Commission hearing. As noted above that ruling was made and it does not appear that the questions of retaliation or racial discrimination were considered at issue when the Commission hearing on the merits was conducted in December 1988. In any event, the Commission made no finding of discrimination or retaliation with regard to the elimination of the Electronic Technician position. Its failure to do so is not the subject of a complaint by the appellee here.

. The testimony reflected that while Johnson’s rate of pay was within the range for both an Electronic Technician and an Electrician I, the top pay for the former classification is $20,-700+ compared to a top level of $19,100+ for the Electrician I position.