# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CC-00990-COA

**CLINT BRELAND**                                                            **APPELLANT**

**v.**

**CITY OF HATTIESBURG, MISSISSIPPI, A**                        **APPELLEE**
**MUNICIPAL CORPORATION**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/2017 |
| TRIAL JUDGE: | HON. JON MARK WEATHERS |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID C. FRAZIER |
| ATTORNEYS FOR APPELLEE: | JAMES W. GLADDEN JR. |
| | MORAN M. POPE III |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED: 11/20/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT**:

¶1.     This appeal stems from Clint Breland's termination of employment as a police officer by the City of Hattiesburg (City), which was upheld by the Hattiesburg Civil Service Commission (HCSC). The Forrest County Circuit Court affirmed the termination. Breland now appeals the Forrest County Circuit Court's ruling. For the following reasons, we affirm.

## FACTS

¶2.     In 2011, 34-year-old Breland made a traffic stop on 16-year-old Christan Damiens. Breland did not give Damiens a ticket for the moving violation but instead gave her a

warning. Thereafter, they shared personal information, both in person and online. They began meeting often while Breland was on and off duty. Within two to four weeks of meeting, they began having a sexual relationship, which lasted six to eight months.

¶3. In response to his actions, Breland was terminated from his employment as a police officer on February 3, 2015, for allegedly violating provisions of the City's Administrative Operations Manual (AOM). Specifically, the City claimed he violated (1) Chapter 26.1.1, Subsection G: Truthfulness; (2) Chapter 26.1.l, Subsection Z: Leaving the City of Hattiesburg; (3) Chapter 26.1.2, Subsection A: Criminal Conduct; (4) Chapter 26.1.2, Subsection B: Conduct Unbecoming of an Officer; (5) Chapter 26.1.2, Subsection C: Neglect of Duty; and (6) Chapter 26.1.2, Subsection II: Abuse of City Time.

¶4. Breland appealed his termination to the HCSC, which upheld Breland's discharge for: (1) conduct unbecoming an officer, (2) neglect of duty, and (3) abuse of city time. He appealed to the circuit court, which found the HCSC's findings were within its purview. Breland has appealed the circuit court's decision to this Court.

¶5. Prior to Breland's discharge, Damiens and Breland were interviewed by Lieutenant Jon Traxler, a senior officer for internal affairs at the Hattiesburg Police Department. Lieutenant Traxler also gave Damiens and Breland a polygraph examination soon after questioning them. Breland's polygraph results indicated Breland to be "untruthful" during his examination.

¶6. After a broad internal investigation, Breland's eight-year employment with the

Hattiesburg Police Department was terminated on February 3, 2015. Breland appealed to the HCSC. The HCSC held a hearing on December 14, 2015, and February 22, 2016, in which it considered all issues and violations associated with the termination of Breland's employment with the City Police Department.

¶7. In its March 7, 2016 decision, the HCSC upheld the City's decision to terminate Breland's employment and specifically found "the testimony of Miss[]Christan Damiens to be credible and uncontroverted after considering all of the testimony and evidence we have found that Officer Breland's conduct and behavior violated . . . section[s] of the AOM." The HCSC did not find the termination was for political or religious reasons and "that the level of punishment imposed was for cause and imposed in good faith."

¶8. Aggrieved, Breland perfected his appeal to the Forrest County Circuit Court, which upheld the decision of the HCSC. Breland now appeals to this Court.

## DISCUSSION

¶9. According to Mississippi Code Annotated section 21-31-9 (Rev. 2015), the HCSC has the duty:

> [T]o make suitable rules and regulations not inconsistent with the provisions of Sections 21-31-1 through 21-31-27. Such rules and regulations shall provide in detail the manner of conducting examinations, appointments, promotions, transfers, reinstatements, demotions, suspensions and discharges, and may also provide for any other matter connected with the general subject of personnel administration, and which may be considered desirable to further carry out the general purposes of Sections 21-31-1 through 21-31-27. It shall have the power to conduct investigations, and make reports on all matters touching the enforcement and effect of the provisions of Sections 21-31-1 through 21-31-27, and the rules and regulations prescribed hereunder. The

3

commission shall have the power to investigate all complaints which must be reduced to writing, subpoena witnesses, administer oaths, and conduct hearings.

"A discharged police officer may appeal his or her termination to a civil service commission, which shall determine whether the decision to terminate the officer was or was not made for political or religious reasons and was or was not made in good faith for cause." *Phillips v. Hancock Cty. Sherriff's Dep't*, 203 So. 3d 622, 626 (¶20) (Miss. Ct. App. 2016). The HCSC, as a duly authorized administrative body, is charged with the duty of being the fact finder in this case. *See Ladnier v. City of Biloxi*, 749 So. 2d 139, 154 (¶61) (Miss. 1999).

¶10.    Further, this Court is not called upon to determine issues of fact regarding whether an employee actually committed the alleged misconduct that led to his or her termination. *Renfro v. City of Moss Point*, 156 So. 3d 913, 917 (¶19) (Miss. Ct. App. 2014). The burden to show that the HCSC acted in bad faith or without cause is upon Breland. *Ladnier,* 749 So. 2d at 155 (¶64) (citing *Stegall v. City of Meridian*, 92 So. 2d 331, 332 (Miss. 1957)).

### 1.    Substantial Evidence

¶11.    Breland first contends that the record is devoid of proof of his misconduct and that there was not substantial evidence to support the City's termination. This Court, like the circuit court, applies the same familiar standard of review for decisions of administrative agencies—"the criterion is whether or not from an examination of the record there exists credible evidence substantiating the action taken by the city. It is upon this basis that the court determines whether or not the decision was in good faith for cause." *City of Jackson*

4

*v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988) (internal quotation marks omitted).

¶12.   "So long as substantial evidence exists, an agency's finding must be allowed to stand even though there might be room for disagreement on that issue." *Miss. Pub. Serv. Comm'n v. Merchants Truck Line Inc.*, 598 So. 2d 778, 782 (Miss. 1992) (internal quotations omitted). "Substantial evidence" means something more than a "mere scintilla" or suspicion. *Public Emps.' Ret. Sys. v. Rachel Marquez*, 774 So. 2d 421, 425 (¶13) (Miss. 2000) (citing *Miss. Real Estate Comm'n v. Anding*, 732 So. 2d 192, 196 (¶13) (Miss. 1999)).

¶13.   At the hearing, the HCSC heard testimony from five witnesses: Christan Damiens, Lieutenant Traxler, Lieutenant Eric Proulx, Lieutenant Mark Denny, and James Reed. Lieutenant Traxler testified that he administered the polygraph examination according to the guidelines set forth in the AOM. Lieutenant Traxler confirmed that "deception was shown" in Breland's polygraph results. Lieutenant Traxler also explained that the polygraph results merely allowed the internal investigation to continue and were not the only factor in Breland's termination.

¶14.   Breland argues that the polygraph was given within minutes of being questioned, without notice or a "cooling-off period" required by the Employee Polygraph Protection Act of 1988 (Act). However the Act states: "this chapter shall not apply with respect to the United States Government, any State or local government, or any political subdivision of a State or local government. . . ."[1] As the circuit court noted, a plain reading makes clear that

_____

[1] 29 U.S.C. § 2006(a) (2012).

5

this Act is not controlling. Lieutenant Traxler stated that the AOM did not require a "cooling off period" nor is there a notice requirement. Reading from the AOM, Lieutenant Traxler stated that the AOM requires that a "member shall submit to a polygraph examination, physical examination, urine screening . . . in intradepartmental investigation into alleged acts of misconduct. Employees are deemed to have consented to testing as a condition of employment."

¶15.   Lieutenant Proulx testified that when he was in the same position as Lieutenant Traxler in 2011, he believed there was a "cooling off period" and notice given to the individual prior to giving the polygraph examination; however, he could not recall which AOM guidelines specified that.

¶16.   Breland argues that when Damiens first gave her statement and underwent the polygraph examination, Lieutenant Traxler was aware that Damiens was still under the influence of drugs that she had taken the night before. Breland also suggests that Lieutenant Traxler threatened her with a "warrant" and coerced her to come in that day to answer questions. Lieutenant Traxler testified that he did not threaten her, and that he did not recall Damiens being under the influence the day he questioned her but that she mentioned "she had used the day before."

¶17.   At the hearing, Damiens testified that her initial statements were truthful, and she further stated that she was no longer using drugs and in a recovery program. Damiens testified that she and Breland had sexual relations "pretty often" and in his patrol car on at

6

least one occasion while Breland was in uniform. Damiens stated that she received other tickets for traffic violations that were "fixed" by Breland.

¶18. Damiens also stated that she did not file a complaint against Breland and "did not want to get anyone in trouble." She confirmed that at the initial questioning she was under the influence from using drugs the night before. She did not recall telling anyone that she should not answer questions because she was "high." Damiens agreed that Lieutenant Traxler offered to "throw away an arrest warrant if she came in"; however, he did not tell her what to say in the interview.

¶19. Reed, a former police officer, testified that he talked to Damiens the day of the initial questioning and that she indicated she was "coerced" into going. Reed believed she was scared of Lieutenant Traxler. Finally, Lieutenant Denny who worked with Breland for a time, testified that Breland was a dependable and an "overall pretty good police officer." Nonetheless, Lieutenant Denny stated that he personally would not engage in an intimate relationship with a 16 year old.

¶20. Breland's written statement was offered as an exhibit. In his statement, Breland admitted to meeting Damiens in 2011 when he wrote her a courtesy ticket for a moving violation. After that, according to Breland, she contacted him via Facebook. Although he denied having sexual contact of any kind with her while he was *on duty*, he stated he may have obtained the dismissal of two tickets written by another officer in 2011. He ended the relationship in the summer of 2012, when he claims he learned that she had stolen items from

his home and was using methamphetamine.

¶21.   Although Breland makes much of the administration of the polygraph test on himself and Damiens, the HCSC considered all the facts and considered Damiens's testimony to be a major factor in its decision-making process.  As such, we agree with the circuit court that there was substantial evidence independent of the test for the HCSC to confirm Breland's termination.

### 2.     Due Process

¶22.   In addition to Breland's issues with the polygraph examination that we have already discussed and determined was not in violation of the AOM, Breland argues that he was precluded from viewing Damiens's entire video and written statements taken at the initial interview.

¶23.   Lieutenant Traxler explained that both the video and the statement had to be redacted because they included other individuals that were involved in the internal investigation. Breland believes that denial of this "crucial" information prevented Breland from being able to fully and effectively cross examine Damiens.  Breland points to his fundamental right to "face one's accuser(s) through the rigors of cross examination with all the pertinent facts provided to the accused."  Breland admits that he received procedural due process in that he had a hearing pursuant to Mississippi Code Annotated section 21-31-23 (Rev. 2015).

¶24.   Breland points to *Reyes v. North Texas Tollway Authority*, 861 F. 3d 558 (5th Cir. 2017), to support his claim that he was deprived of due process.  In *Reyes*, the Fifth Circuit

8

explained that to prove substantive due process, an employee must show that the government's action was "so egregious, so outrageous, that it may fairly be said to shock the conscience." *Id.* at 562 (quoting *Conroe Creosoting Co. v. Montgomery Cty.,* 249 F.3d 337, 341 (5th Cir. 2001)); *see also Hall v. Board of Tr. of State Inst. of Higher Learning*, 712 So. 2d 312, 319 (¶25) (Miss. 1998) (explaining substantive due process).

¶25. The record is clear that the City conducted a broader internal investigation. The City followed procedures outlined in the AOM. In addition, Lieutenant Traxler's reasons for the redacted items and their availability rebutted Breland's assertions that the information was being withheld. Nothing in the record "shocks the conscience" with regard to substantive due process. Furthermore, it is evident that Breland was afforded an evidentiary hearing, was represented by counsel, and was permitted to call witnesses on his behalf and had an opportunity to be heard. Breland had time to conduct a thorough examination of Damiens prior to the hearing and cross examine her at the hearing. We do not find that Breland was deprived of due process, and from the whole record, we are of the opinion the HCSC was justified in finding that his discharge was for cause and imposed in good faith.

### 3. Collateral estoppel

¶26. In Breland's final argument, he argues that the HCSC is precluded from determining factual issues in the case at bar, because the same issues have been decided by an Administrative Law Judge (AJ) in Breland's unemployment compensation hearing.

> [T]he doctrine of collateral estoppel must never be seen as anything other than an unusual exception to the general rule that all fact questions should be

9

litigated fully in each case.

> The several predicates to application of the preclusive effect of the doctrine . . . are designed to promote substantial judicial and litigant interests. They are also designed to assure substantial reliability in the facts found in the first proceedings. Where there is room for suspicion regarding the reliability of those first fact findings, collateral estoppel should never be applied.

*City of Ocean Springs v. Homebuilders Ass'n of Miss. Inc*., 932 So. 2d 44, 59 (Miss. 2006) (citing *Miss. Emp't Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist. of Neshoba Cty.*, 437 So. 2d 388, 396 (Miss. 1983)).

¶27. The AJ was not a fact finder of the issue at hand, namely whether Breland's termination was supported by substantial evidence. The AJ was specifically charged with determining whether the City met its burden to establish misconduct such that it would warrant the claimant, Breland, a disqualification for benefits. While the AJ held that Breland was entitled to benefits, it noted that it "does not question the employer's right to terminate an employee." This issue falls squarely within the HCSC's purview to determine the underlying validity of the termination.

¶28. Furthermore, we note that the telephonic hearing conducted with the AJ did not allow for testimony or cross examination of witnesses, which is a right Breland and the City exercised during the HCSC hearing and the HCSC specifically relied on Damiens's testimony. The HCSC had a duty "as trier of the facts, to determine what the real facts were in connection with the discharge. They saw and heard the witnesses, and observed their demeanor." *Hill v. City of Hattiesburg*, 223 Miss. 163, 166, 77 So. 2d 827, 828 (Miss. 1955).

10

We find that not all the factual issues and the specific questions raised at the HCSC hearing were litigated fully at the unemployment compensation hearing and therefore the doctrine of collateral estoppel does not apply.

¶29. For the foregoing reasons, we affirm the HCSC's findings upholding Breland's termination.

¶30. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**