DAN M. LEE, Justice,
for the Court:
On February 1, 1977, Nathaniel Samuels was employed by the City of Laurel in the office of City Planner as a community organization worker. His salary was $800 per month payable from funds of B-75HN-08-0008 community development entitlement. By order of the Mayor and Board of Commissioners Marva Samuels was hired by the City of Laurel on November 13, 1979, as a special worker in the community development department at a salary of $750 per month. On the 25th day of August, 1981, separate orders of the mayor and board of commissioners suspended both Nathaniel Samuels and Marva Samuels from their employment with the city due to “budget cuts and overstaffed.”
The Samuelses then sought an investigative hearing from the Civil Service Commission, City of Laurel. They complained that they were not properly dismissed and were entitled to be reinstated to their positions with the City. The Civil Service Commission, City of Laurel, responded by stating that as employees of the City of Laurel, the Samuelses were not subject to civil service regulations. The Samuelses then appealed that decision to the Circuit Court of Jones County. That court reversed the civil service commission and held that the Samuelses were subject to civil service procedures and regulations. The City now brings this appeal from the circuit court’s ruling.
The central issue here is whether the Samuelses, as City of Laurel employees, were protected under the civil service system as established by our state legislature. There are two sets of civil service systems operating under legislative mandate in the State of Mississippi. The first system was *531 established by Miss.Code Ann. §§ 21-31-1 —21-31-27. Under § 21-31-1 that system is applicable to the following municipalities:
(a) Any municipality, operating under a commission form of government, and having a population of not less than fourteen thousand, according to the federal census of 1940;
(b) Any municipality, under whatever form of government, having a population of not less than twenty-four thousand, according to the federal census of 1940, and situated in counties having a national military park;
(c) Any municipality, operating under the commission form of government, and having a population of not less than ten thousand, five hundred nor more than eleven thousand, according to the federal census of 1950;
(d) Any municipality, having an alder-manic form of government, having a population of not less than 4770 at the 1960 federal census, and situated on the Mississippi Gulf Coast;
(e) Any municipality with its corporate limits being bounded on one side by the Mississippi River and being located in a county having an assessed valuation in excess of forty million dollars but less than fifty million dollars and having a total population in excess of thirty-seven thousand, five hundred, according to the latest federal census; and
(f) Any municipality, operating under special charter, and in which there is located a state-supported college for women.
From a reading of all of the code sections establishing that civil service system, it becomes apparent that it was intended only to cover employees of the fire and/or police departments of the municipalities coming within its purview. See § 21-31-13 which expressly limits applicability of the section to “all full paid employees of the fire and police departments of each municipality ...”
The second civil service system was created by Miss.Code Ann. §§ 21-31-51 — 21-31-75. That system is applicable as follows:
(1) There is hereby created a civil service commission to administer a civil service system in every municipality described in subsection (2) of this section which has administrative and other employees employed on a monthly basis.
(2) The provisions of subsection (1) of this section shall apply to:
(a) Any municipality, operating under a commission form of government, and having a population of more than twenty-one thousand, according to the federal census of 1950; and
(b) Any municipality located in the Ya-zoo-Mississippi Delta Levee District, and having a population of more than fifteen thousand and less than twenty thousand, according to the federal census of 1950.
Miss.Code Ann. § 21-31-51 (1972)
The scope of coverage under this second system is delineated by § 21-31-61 which reads:
The provisions of sections 21-31-51 to 21-31-75 shall include all administrative and other employees on a monthly salary basis. All appointments to and promotions in said departments shall be made solely on merit, efficiency, and fitness which may be ascertained by open competitive examination and impartial investigation. No person shall be reinstated in, or transferred, suspended, or discharged from any place, position or employment contrary to the provisions of sections 21-31-51 to 21-31-75.
All incumbents and future appointees shall be subject to civil service, except, however, those appointees now and hereafter serving as extra members, which said employees shall be subject to removal for replacement by any person now or hereafter serving in the armed services, or if temporarily employed, the commission shall have authority to so determine and replace with a new employee who shall be subject to the provisions of sections 21-31-51 to 21-31-75.
The city argues that because it has been required to establish a civil ser *532 vice system under the provisions set forth in §§ 21-31-1 — 21-31-27, it could not have been required to establish a further civil service system after the passage of § 21-31-51, et seq. There is no authority for this position and upon a review of the code it becomes readily apparent that the circuit court was correct. Because the civil service system set up under § 21-31-1 — 21-31-27 was applicable only to police and fire employees it does not follow that the legislature intended to exclude those municipalities from any further civil service provisions. Under the wording of § 21-31-51(2)(a), there was plainly no exclusion intended by the legislature: “Any municipality, operating under a commission form of government, and having a population of more than twenty-one thousand, according to the federal census of 1950.” According to the official federal census of 1950, Laurel had a population of twenty-five thousand thirty eight people. It readily becomes apparent that the circuit court was correct in holding that the City of Laurel’s position is untenable. We affirm his ruling that the Samuelses were subject to the civil service system and that they were therefore wrongfully discharged, as the provisions of Miss.Code Ann. § 21-31-71 were not met when the Samuelses were discharged. In doing so we intimate no opinion as to whether the City could rightfully discharge the Samuelses had it followed the appropriate procedural requirements set forth in the civil service statutes.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.