# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CC-00658-COA

CLAY NECAISE                                                                    APPELLANT

v.

CITY OF WAVELAND, MISSISSIPPI                                   APPELLEE

DATE OF JUDGMENT:                 04/30/2014
TRIAL JUDGE:                            HON. ROGER T. CLARK
COURT FROM WHICH APPEALED:   HANCOCK COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        BENJAMIN U. BOWDEN
ATTORNEYS FOR APPELLEE:         J. CHADWICK MASK
                                              GARY MCKAY YARBOROUGH JR.
                                              CLIFTON MICHAEL DECKER
NATURE OF THE CASE:                CIVIL - TORTS - OTHER THAN PERSONAL
                                              INJURY AND PROPERTY DAMAGE
TRIAL COURT DISPOSITION:         AFFIRMED APPELLANT'S TERMINATION
DISPOSITION:                           AFFIRMED - 07/21/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE LEE, C.J., ISHEE AND CARLTON, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     Clay Necaise appeals the Hancock County Circuit Court's judgment affirming his termination from the police department of the City of Waveland, Mississippi. On appeal, Necaise argues that the circuit court erred because the record lacked substantial evidence to show that he was terminated in good faith for cause. Finding no error, we affirm.

## FACTS

¶2.     From 2008 until October 29, 2010, Necaise worked for the Waveland Police Department. On October 15, 2010, Necaise's fellow officer, Joshua Poyadou, filed a formal

complaint against Necaise. Officer Poyadou's complaint alleged that, while on patrol duty on July 22, 2010, Necaise abandoned his responsibilities and had sex with Officer Poyadou's fiancée, Christy Spence.

¶3. As a result of Officer Poyadou's complaint, Police Chief James Varnell investigated the allegations against Necaise. Chief Varnell obtained Necaise's time sheet and computer-aided dispatch report (CAD sheets) for the night in question. The CAD sheets detailed Necaise's on-duty activity on July 22, 2010, and showed that Necaise had a period of inactivity at the end of his shift for about an hour and a half. Chief Varnell assigned Officer John Saltarelli to take Spence's statement regarding the alleged incident on July 22, 2010. Spence stated that she had sex with Necaise that night, and the time frame she gave for the incident coincided with the period of inactivity recorded by Necaise's CAD sheets.

¶4. During the course of the investigation, Chief Varnell reviewed text messages between Necaise and Spence. He also reviewed a videotape provided by Officer Poyadou when he filed his complaint. The videotape captured a discussion between Officer Poyadou and Spence on October 15, 2010, while the couple sat inside Officer Poyadou's patrol vehicle. During the conversation, Spence admitted to Officer Poyadou that she had sex with Necaise on July 22, 2010, while Necaise was on duty.

¶5. After reviewing the evidence and completing his investigation, Chief Varnell met with Waveland's mayor, the city attorney, and the city clerk on October 29, 2010. Chief Varnell then met with Necaise later that day and informed Necaise of the allegations against him. At the end of the meeting, Chief Varnell gave Necaise a letter notifying Necaise of his

termination. The letter set forth the allegations against Necaise and explained the steps Necaise could take to appeal his termination.

¶6. Following his termination, Necaise filed a grievance and exercised his right to an administrative hearing with Waveland's mayor. Two administrative hearings were held on Necaise's grievance. After the second hearing, David Garcia, Waveland's newly elected mayor, issued a letter upholding Necaise's termination. Mayor Garcia found that sufficient evidence existed to support Chief Varnell's conclusion that Necaise engaged in the activity for which he was terminated. Mayor Garcia also found that Chief Varnell's decision "was supported by substantial evidence and was for just cause."

¶7. Necaise next appealed Mayor Garcia's decision to the Waveland Civil Service Commission (the Commission). The Commission held public hearings on Necaise's appeal on June 30, 2011, and July 26, 2011. Pursuant to Waveland City Ordinance 251 (the ordinance), the Commission found its review was limited to whether Necaise was terminated in good faith for cause. After considering the parties' evidence and testimony, the Commission upheld Necaise's termination by a 3-2 vote. The Commission found that Necaise was, in fact, terminated in good faith for cause. The Commission further found the termination was not arbitrary or capricious and was supported by the evidence.

¶8. Aggrieved by the Commission's decision, Necaise filed a notice of appeal to the circuit court on October 4, 2011. In his April 30, 2014 order affirming the Commission's decision, the circuit court judge stated that the question before him was not whether he would have made a different decision regarding Necaise's termination but whether the Commission

3

acted in accordance with the ordinance. After considering the matter, the circuit court judge concluded that the evidence supported the Commission's decision. He also found that Necaise was terminated in good faith for cause. As a result, the circuit court judge affirmed the Commission's decision to uphold Necaise's termination. Aggrieved by the circuit court's judgment, Necaise now appeals to this Court.

## STANDARD OF REVIEW

¶9.    When dealing with an appeal from a civil service commission's decision, the appellate court's standard of review is as follows:

> [T]he question before the appellate court is whether or not the action of the Civil Service Commission was in good faith for cause. Intertwined with this question is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether [the decision] is arbitrary, unreasonable, confiscatory, and capricious.

*City of Vicksburg v. Lane*, 11 So. 3d 162, 165 (¶10) (Miss. Ct. App. 2009) (quoting *City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988)).

## DISCUSSION

¶10.    In *Prendergast v. City of Waveland*, 146 So. 3d 1021, 1022 (¶¶1-2) (Miss. Ct. App. 2014), this Court decided an appeal that was controlled by the same ordinance applicable to Necaise's appeal. In discussing the *Prendergast* appeal, this Court acknowledged the following:

> First and foremost, it is necessary to note that this case does not turn on any application of Mississippi statutory law. Mississippi Code Annotated section 21-31-1 (Rev. 2007) mandates that certain municipalities must have a civil service commission. Similarly, Mississippi Code Annotated section 21-31-3 (Rev. 2007) gives qualified municipalities the authority to adopt a civil service commission. The [Waveland Civil Service] Commission is unique in

4

that it is not a creature of either statute. Instead, the Commission is the product of Waveland City Ordinance 251 ("the ordinance"), which was authorized by House Bill 1770 of the 1994 Mississippi legislative session. Consequently, neither the provisions nor the procedures set forth in the statutes that pertain to civil service commissions apply to this case. . . . [S]ection 10 of the ordinance states that it "shall not be construed to invoke the provisions of [s]ections 21-31-1 through 21-31-75, which deal with civil service, nor to invoke the law of any court decisions made pursuant thereto.

*Prendergast*, 146 So. 3d at 1024 (¶12).

¶11. Section 4(1)(a) of the ordinance establishes that a termination constitutes a "covered job action" subject to appeal by a "covered employee." The record reflects that Necaise was a covered employee and was subjected to a covered job action. Therefore, following his termination, Necaise possessed the right pursuant to the ordinance to seek "an administrative hearing before the mayor, who shall determine the reasonableness of the job action and either affirm, modify, or overturn the job action." Waveland City Ordinance 251 § 9(2).

¶12. Because he disagreed with the mayor's decision to affirm his termination, Necaise possessed ten days to appeal the mayor's decision to the Commission, which "shall then hold a hearing confined to the question of whether such action was taken for good cause and in good faith[.]" *Id.* at § 9(4). The ordinance authorizes the Commission to affirm the covered job action if it finds the action was for cause; was not arbitrary and capricious; and was not based on certain prohibited reasons. *Id.* Furthermore, the ordinance directs that "[t]he [C]ommission shall affirm actions [that] are supported by facts, analysis[,] and findings of the responsible official, even if such action is fairly debatable." *Id.* Where an employee or the City appeals the Commission's decision to the circuit court, the circuit court's hearing "shall be confined to the determination of whether the [C]ommission acted in accordance

5

with this [A]ct and the ordinance." *Id.* at § 9(5).

¶13.    On appeal to this Court, Necaise argues the record fails to contain any evidence to show that he was terminated in good faith for cause.  Instead, Necaise asserts that all the evidence establishes that his termination was without cause and not in good faith.  Despite Necaise's assertions, however, the record contains substantial evidence to support his termination and to show that the termination was in good faith for cause in accordance with Waveland's ordinance.

¶14.    The record reflects that, before terminating Necaise, Chief Varnell investigated Officer Poyadou's allegations against Necaise.  In addition to filing a formal complaint asserting that Necaise had sex with Spence while Necaise was on duty on July 22, 2010, Officer Poyadou provided a videotaped conversation to corroborate his allegations.  The recording revealed a conversation between Officer Poyadou and Spence in which Spence admitted that she met and had sex with Necaise on July 22, 2010, while Necaise was on duty.

¶15.    After reviewing Officer Poyadou's complaint and the videotape recording, Chief Varnell pulled Necaise's time sheet and CAD sheets for the date in question.  Upon looking at these documents, Chief Varnell discovered that a gap of almost an hour and a half existed in which Necaise's whereabouts were unknown, and Necaise's paperwork failed to document any activity.

¶16.    Chief Varnell next assigned Officer Saltarelli to take a statement from Spence regarding the events of July 22, 2010.  According to Spence's statement, she met and had sex with Necaise around 10:30 p.m. on July 22, 2010.  Spence stated that Necaise was still on

6

duty at the time and was driving his patrol car and wearing his police uniform when the two met. After reviewing Spence's statement, Chief Varnell discovered that her timeline of events matched the period of inactivity reflected by Necaise's July 22, 2010 time sheet and CAD sheets.

¶17. Based upon the evidence gathered during his investigation, Chief Varnell terminated Necaise. When Necaise appealed his termination to the Commission, the Commission held a hearing and reviewed the evidence and testimony presented by the parties. After considering all the evidence, the Commission upheld Necaise's termination. Upon review, we find that the Commission's decision was made in good faith for cause and that substantial evidence supports the Commission's decision. Accordingly, we find that Necaise's argument on appeal lacks merit, and we affirm the circuit court's judgment affirming the Commission's decision.

¶18. **THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. WILSON, J., NOT PARTICIPATING.**