## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CC-00492-COA

**LOUIS EDWARD BOURGEOIS**                                              **APPELLANT**

**v.**

**CITY OF BAY ST. LOUIS CIVIL SERVICE**                                **APPELLEE**
**COMMISSION**

DATE OF JUDGMENT:            03/03/2017
TRIAL JUDGE:                 HON. LAWRENCE PAUL BOURGEOIS JR.
COURT FROM WHICH APPEALED:   HANCOCK COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:     WILLIAM ALEX BRADY II
                             MICHELLE ELIZABETH LUBER
ATTORNEY FOR APPELLEE:       JENNIFER HUGHES SCOTT
NATURE OF THE CASE:          CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                 AFFIRMED: 10/02/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., FAIR AND TINDELL, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     The City of Bay St. Louis fired Louis Bourgeois after he asked a police officer to run a license plate number for him. Bourgeois said a vehicle had been following him, and he feared it related to his job as a fire inspector. But it turned out that the man who owned the vehicle was dating Bourgeois's former girlfriend, and the City concluded that Bourgeois's story about being followed was a pretext to pursue a personal vendetta. The City's civil service commission affirmed Bourgeois's firing, and the circuit court affirmed the commission. We affirm as well.

**DISCUSSION**

¶2.　　Bourgeois presents thirteen issues for our review, which we have reorganized and consolidated for clarity and economy.

### 1.　　Controlling Law

¶3.　　Bourgeois and the City disagree as to whether his termination was governed by the Mississippi Code or by a city ordinance. Bourgeois contends that the general civil service statute, Mississippi Code Annotated sections 21-31-1 through 21-31-75 (Rev. 2015) controls, and the City failed to comply with its requirements. The City, however, points out that the statute only applies to certain categories of municipalities, listed in section 21-31-1 (2), and Bay St. Louis does not fit into any of them. The City contends that it is instead governed by a local and private law, House Bill 1367 of the 1989 legislative session, and by the City ordinance implementing a civil service system as permitted by the aforementioned law.

¶4.　　In *Laurel v. Samuels*, 469 So. 2d 530, 531 (Miss. 1985), the Mississippi Supreme Court observed that cities not listed in section 21-31-1(2) are not required to follow the civil service statutes. The court stated that "[f]rom a reading of all of the code section establishing that civil service system, it becomes apparent that it was intended only to cover employees of the fire and/or police departments of the municipalities coming within its purview." *Id*. Section 21-31-1(2) lists of eight types of municipality that are mandated to create a civil service commission, so long as the municipality has a fully paid fire and police department. Bay St. Louis does not fit into any of the eight classifications.

¶5.　　We encountered the same issue in the recent case of *Necaise v. City of Waveland*, 170

2

So. 3d 616, 618-19 (¶10) (Miss. Ct. App. 2015), where Waveland's civil service commission

was also authorized by a local and private law. We held:

> First and foremost, it is necessary to note that this case does not turn on any application of Mississippi statutory law. Mississippi Code Annotated section 21-31-1 (Rev. 2007) mandates that certain municipalities must have a civil service commission. Similarly, Mississippi Code Annotated section 21-31-3 (Rev. 2007) gives qualified municipalities the authority to adopt a civil service commission. The Waveland Civil Service Commission is unique in that it is not a creature of either statute. Instead, the Commission is the product of Waveland City Ordinance 251 ("the ordinance"), which was authorized by House Bill 1770 of the 1994 Mississippi legislative session. Consequently, neither the provisions nor the procedures set forth in the statutes that pertain to civil service commissions apply to this case. Section 10 of the ordinance states that it "shall not be construed to invoke the provisions of sections 21-31-1 through 21-31-75, which deal with civil service, nor to invoke the law of any court decisions made pursuant thereto."

*Id.* (quoting *Prendergast v. City of Waveland*, 146 So. 3d 1021, 1022 (¶¶1-2) (Miss. Ct. App.

2014)). Obviously, Waveland's situation was not so unique as we suggested—section 10(2)

of House Bill 1367 (authorizing Bay St. Louis to create a civil service system) also provides

that it "shall not be construed to invoke the provisions of [s]ections 21-31-1 through 21-31-

75, . . . which deal with civil service, nor to invoke the law of any court decisions made

pursuant thereto."

¶6.     The City is correct that it is governed by House Bill 1367 and its own ordinance and

not by the general civil service statutes of the Mississippi Code.

## 2.      Motion to Recuse All Commissioners

¶7.     Prior to the civil service commission hearing, Bourgeois moved to recuse all three

commissioners. There were arguments from both sides, and two exhibits entered into

3

evidence on the motion. Ultimately, all three commissioners declined to disqualify themselves. Bourgeois raised this issue before the circuit court, but it declined to review it based on dictum in this Court's decision in *City of Vicksburg v. Cooper*, 909 So. 2d 126, 130 (¶15) (Miss. Ct. App. 2005). There, we suggested that the issue of recusal, which was procedurally barred in that case, "would probably still have been procedurally improper pursuant to the limited scope of review established under Mississippi Code Annotated [section] 21-31-23 (Rev. 2001)." *Id.* The statute limits review "to the determination of whether the judgment or order of removal . . . was or was not made in good faith for cause and no appeal to [the circuit] court shall be taken except upon such ground or grounds." *Id.*

¶8. As we held in the prior issue, the statute does not control because House Bill 1367, which authorized Bay St. Louis's civil service commission, expressly provides that it does not. For the City of Bay St. Louis, House Bill 1367 requires that an appeal to the circuit court "shall be confined to the determination of whether the commission acted in accordance with this act and the ordinance." Although the ordinance and House Bill 1367 do not address recusal of commissioners, we do not see this as precluding our review of whether due process required the commissioners to disqualify themselves.

¶9. Still, Bourgeois advocates for a stricter standard for recusal than was actually required. He argues that the standard should be the same as it is for judicial recusal—whether the commissioner's impartiality might be questioned by a reasonable person knowing all the circumstances. *See, e.g.*, *West v. State*, 131 So. 3d 583, 586-87 (¶10)

4

(Miss. Ct. App. 2013). But the standard is actually much more lenient. In *United Cement Company v. Safe Air for the Environment Inc.*, 558 So. 2d 840, 842 (Miss. 1990), our supreme court explained that administrative hearings "are not trials and they are not governed by the same rules which apply in courts of law." "[T]here is a presumption that the officers conducting the hearing and the members of the [commission] behave honestly and fairly in the conduct of the hearings and in the decision-making process[,]" and that presumption is not overcome "[a]bsent some showing of personal or financial interest . . . or evidence of misconduct . . . ." *Id.*; *see also Byrd v. Greene Cty. Sch. Dist.*, 633 So. 2d 1018, 1022-23 (Miss. 1994).

¶10.    The only concerns raised by Bourgeois were that the commissioners were appointed by the mayor who decided to terminate him, and that each of the three commissioners had a close relative who was an employee of the city. As to the first concern, the commissioners were appointed lawfully according to House Bill 1367 and the city ordinance, and appointment by the mayor presents no actionable concerns because it is not evidence of a personal or financial interest or evidence of misconduct. *See Byrd*, 633 So. 2d at 1022. Likewise, the fact that each of the commissioners had family members who were also city employees, without more, fails to meet the test. *See id.* We can find no error in the commissioners' refusal to disqualify themselves.

### 3.    Pretermination Procedure

¶11.    We next address several issues raised by Bourgeois concerning the procedural aspects

5

of his initial termination by the fire chief, which we consolidate.

¶12. Most of Bourgeois's contentions here share a common defect: they are premised on general civil service statutes of the Mississippi Code. As we held in the prior issue, the City is governed by House Bill 1367 of 1989 and its own ordinance. House Bill 1367 specifically provides that it "shall not be construed to invoke the provisions of [s]ections 21-31-1 through 21-31-75, . . . which deal with civil service, nor to invoke the law of any court decisions made pursuant thereto." Most of the code sections cited by Bourgeois do not appear to have direct analogues in either House Bill 1367 or the Bay St. Louis ordinance. Thus, Bourgeois's arguments based on the Mississippi Code are without merit.

¶13. Bourgeois does make several contentions along the same line that are directed to the City ordinance or to departmental policy. He alleges he was suspended and then fired by the fire chief without being given a "written notification of the intended job action before it becomes effective," which the city ordinance requires "in the absence of critical circumstances"; Bourgeois received written notice when he was fired, three days later. He also contends that a fire department policy required the disciplinary proceedings be initiated by the deputy fire chief, and that a pre-disciplinary consultation with the city human resources director was required "if warranted." So far as the record reveals, the deputy fire chief had no involvement with Bourgeois's termination, and the human resources director was only consulted after Bourgeois's suspension by the fire chief (but prior to his termination).

6

¶14. Even if we were to concede these points, Bourgeois ignores the provision of the City's civil service ordinance, which provides that "inadvertent and minor deviations from established procedures which do not substantively impair an employee's rights shall not be the basis for overturning a job action." Bourgeois's complaints are, at best, concerning minor procedural aspects that do not speak to the underlying merits of his firing. And the deviation from the procedure outlined, even if accepted as true, did not substantially impact its overall fairness. There can be no question that Bourgeois was made aware of the allegations against him well in advance of the administrative hearing before the mayor and the evidentiary hearing before the commission. We can find no reversible error here.

### 4. Criminal Records of Other Employees

¶15. The commission refused to allow Bourgeois to elicit testimony concerning the criminal backgrounds of other individuals working at the fire department on the basis that it was irrelevant. Bourgeois did not proffer the particulars, but he suggested that at least one individual working for the fire department had a prior felony conviction. Bourgeois contends that this evidence would have shown that lesser punishments were appropriate and, essentially, that the City was willing to employ people who had done worse than what it fired him for.

¶16. Bourgeois offers no authority in support of this argument, and as a result it is deemed abandoned. *See, e.g., Duncan v. State*, 939 So. 2d 772, 779 (¶25) n.3 (Miss. 2006). But, notwithstanding the procedural bar, we see no reversible error.

7

¶17. "It is well settled that administrative bodies have the discretionary authority to apply procedural and evidentiary rules in a flexible manner so as to most efficiently carry out their responsibilities." *Miss. Dept. of Human Servs. v. McDonald*, 24 So. 3d 378, 381 (¶9) (Miss. Ct. App. 2009) (citing *McGowan v. Miss. State Oil & Gas Bd.*, 604 So. 2d 312, 318 (Miss. 1992)). It is equally well settled that, even in court proceedings, error in admitting or excluding evidence will not amount to reversible error unless a substantial right of a party is affected. *See, e.g.*, M.R.E. 103.

¶18. Bourgeois did not proffer any of this evidence, but even assuming that the fire department employed someone with a prior felony conviction, whether or not someone with a criminal record works at the fire department has little to no bearing on whether Bourgeois's termination was in good faith for cause. Bourgeois suggests on appeal that criminal offenses may have been committed while the individuals were employed by the City, but he made no such suggestion when he offered the evidence to the commission. And Bourgeois does not even suggest that the offenses committed by other employees related to or were committed during the course of their employment with the city. This issue is procedurally barred and without merit.

## 5. Fact-Finding and Merits of the Termination

¶19. Finally, we address the numerous issues Bourgeois has raised regarding the commission's findings of fact and the underlying merits of his termination. At the outset we note that our review is "confined to the determination of whether the commission acted in

8

accordance with" House Bill 1367 of the 1989 legislative session and the City's ordinance establishing a civil service commission. *Waveland*, 170 So. 3d at 618-19 (¶10). In so doing, we apply the familiar standard of review for decisions of administrative agencies—"whether or not [the] decision is supported by substantial evidence or is arbitrary or capricious, etc. or in other words whether or not it was made in good faith for cause." *City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (1988) (quoting *City of Meridian v. Davidson*, 211 Miss. 683, 695, 53 So. 2d 48, 53 (1951)).

¶20.    "So long as substantial evidence exists, an agency's finding must be allowed to stand even though there might be room for disagreement on that issue." *Miss. Pub. Serv. Comm'n v. Merchants Truck Line, Inc.*, 598 So. 2d 778, 782 (Miss. 1992) (internal quotation mark omitted). "Substantial evidence" means something more than a "mere scintilla" or suspicion. *Pub. Empls.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (¶13) (Miss. 2000).

¶21.    After the hearing, the commission rendered a written opinion detailing its findings. On appeal, Bourgeois challenges several specific findings, including whether he was followed by the vehicle, a point on which he offered corroborating testimony. As to whether he was followed, Bourgeois seems to misapprehend the actual finding of the commission. It did not find that he was never followed; rather, it found that Bourgeois knew he had a personal dispute with the owner and had falsely led a police officer to believe it could be work-related. There is more than substantial evidence in the record in support on this point—Bourgeois asked that the tag be run while he was off-duty; he had never reported

9

being followed to his supervisors; he admitted he knew the vehicle was connected to his ex-girlfriend because he had seen it at her house. And Bourgeois omitted those details when he requested the tag be run, then a short time later he confronted his ex-girlfriend with the information he had obtained.

¶22. Bourgeois challenges several other findings. He contends that there was no City policy specifically prohibiting what he did nor any evidence he knew of such a policy. He also disputes that the "running of the plate" actually involved the National Crime Information Center (NCIC) database, that it was a violation of NCIC policies and federal law, and that his actions potentially exposed the City to liability. Although the commission did make all of these findings, the central allegation and the central finding supporting Bourgeois's termination was that he misused his City employment for personal advantage. As we explained above, that finding was supported by substantial evidence and is, in and of itself, a sufficient basis to support the decision to terminate Bourgeois's employment.

¶23. Bourgeois also takes issue with the commission's observations that his comments to the public and the local newspaper had harmed the City, because the reports referenced in the opinion were not introduced at the hearing. We find any error on this point to be harmless given the clear support in the record for Bourgeois's termination.

¶24. Finally, Bourgeois claims his termination had an ulterior motive. In support of his theory, Bourgeois offered a voice recording of a meeting between him and the Fire Chief into evidence. In the recording, the Fire Chief is heard saying that if a local restaurant were shut

10

down, "there would be hell to pay." Bourgeois urges this encounter was the real reason he was fired, but it was a point of fact for the commission, not this Court, to decide. We cannot retry factual disputes on appeal. We emphasize again that "[s]o long as substantial evidence exists, an agency's fact finding must be allowed to stand even though there might be room for disagreement on that issue." *Merchants Truck Line*, 598 So. 2d at 782.

¶25. The commission's decision was supported by substantial evidence and must be affirmed on appeal.

¶26. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**