# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CC-00767-COA

**CITY OF MERIDIAN, MISSISSIPPI**                     **APPELLANT**

**v.**

**ADAM MEADORS**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/05/2015 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM WYATT SIMMONS |
| | MATTHEW RICHARD WATSON |
| ATTORNEY FOR APPELLEE: | DAVID H. LINDER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | REVERSED THE MERIDIAN CIVIL SERVICE COMMISSION'S ORDER AND ORDERED THE APPELLANT TO REINSTATE THE APPELLEE'S EMPLOYMENT |
| DISPOSITION: | REVERSED AND RENDERED - 12/06/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**BARNES, J., FOR THE COURT:**

¶1. This appeal results from the City of Meridian's termination of one of its police officers, Adam Meadors, for an inappropriate photo he posted on his Facebook account while on duty, which was found to be in violation of the City's rules and regulations. The Meridian Civil Service Commission affirmed Meadors's termination on appeal, but the Lauderdale County Circuit Court subsequently reversed the Commission's findings and ordered the City to reinstate Meadors. Finding Meadors's termination was made in good faith for cause and

supported by the evidence, we reverse and render the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On October 5, 2013, Meadors, a police officer for the Meridian Police Department (MPD) since 2006, posted to his public Facebook page a photo depicting two chimpanzees laughing with the following caption: "Earlier today[,] the mayor and the chief of police had a meeting." He commented on the photo, saying: "Something will probably be said, but I couldn't resist." After a few minutes, however, he removed the photo. Meadors was on duty at the time he posted the photo, even though he was at home on a meal break.

¶3. Meadors's Facebook post was brought to the City's attention, and the MPD conducted an internal-affairs investigation to determine whether the picture violated the City's or MPD's regulations. Meadors provided a statement on October 9, 2013, acknowledging he "knew that posting the picture might offend some people," but he explained that it was "meant to be a joke and not meant to be taken serious[ly] by anyone." When later questioned by the investigator whether he was "thinking of" Meridian's Mayor Percy Bland and Chief of Police James Lee, both African American, when he posted the photo, Meadors answered: "Yeah, that's true, but I have friends on Facebook at other agenc[ies] that might assume I was talking about other mayors and chiefs where they work." He also admitted that he knew his friends in Meridian would assume he was referring to Mayor Bland and Chief Lee.

¶4. Meadors received a written notice of MPD's intent to terminate him on October 14, 2013, signed by Chief Lee and Chief Administrative Officer Curt Goldacker, and he was placed on administrative leave. The notice charged Meadors with violating numerous

2

sections of the MPD Code of Conduct, along with Civil Service Code Rule 10.01(a)(B) and (C) (detrimental conduct). Although there was a line for Mayor Bland to sign the notice of termination, his signature was not on the document. Meadors responded on October 15, 2013, claiming that the posting on social media was done "on [his] own time" and "constitute[d] free speech . . . protected by the First Amendment to the United States Constitution." Meadors was officially terminated on October 16, 2013; his termination letter was signed by Chief Lee.

¶5.     Meadors filed an appeal with the Commission, requesting full reinstatement and back pay. At the appeal hearing, Meadors argued there was nothing in the photo to indicate that he was referring to Mayor Bland and Chief Lee, and his termination violated his right to free speech. Meadors additionally argued that Mayor Bland, the appointing authority, did not sign his termination notice, which Meadors argued was a violation of Mississippi Code Annotated section 21-31-23 (Rev. 2007). Mayor Bland, however, testified that he had verbally designated Chief Lee with the authority to proceed with Meadors's termination.

> Q.     [D]id you properly authorize Chief Lee to issue a final notice of termination to Adam Meadors on October 16th, 2013?
>
> A.     Yes, I did designate Chief Lee.
>
> Q.     Were all the disciplinary actions that were taken in regard to Adam Meadors in regard to these violations of October 2013 taken with your full knowledge and consent as Mayor and appointing authority for the City of Meridian?
>
> A.     Yes.

¶6.     The Commission upheld the City's firing of Meadors. Regarding his First

Amendment claim, the Commission concluded that there was no "public concern interest in this speech or expression" and that Meadors's Facebook post, "at best, . . . was an expression ridiculing the Mayor and Chief of Police's humanity and[,] at worst[,] it was an expression of racial prejudice." The Commission also determined that "[t]he law does not require that designees be recognized in writing." It did, however, admonish the City that, if the Mayor was going to continue to delegate the authority to sign such forms, he should "designate individuals with the authority he wishes them to possess in writing and that the forms used eliminate the Mayor's name unless he intends to start signing them."

¶7.     On July 2, 2014, Meadors filed an appeal with the circuit court. Concluding that "there was no indication in the record that Mayor Bland was aware of or approved Meadors's termination, other than the mayor's testimony" at the Commission hearing, the circuit court reversed the Commission's order and directed the City to reinstate Meadors on May 5, 2015. As this issue was dispositive of Meadors's appeal, the circuit court did not address Meadors's First Amendment argument.

¶8.     The City appeals the circuit court's judgment, arguing the circuit court "failed to apply the proper standard of review," erroneously re-adjudicated the Commission's "factual and credibility determinations," and failed to address caselaw "factually analogous" to the instant case. Meador also brings an alternative claim on appeal, reasserting his First Amendment argument and requesting a remand on this issue if this Court finds the circuit court's judgment warrants reversal.[1]

---

[1] The City also filed a motion to stay the execution of judgment pending an appeal, which the circuit court granted on June 15, 2015.

4

¶9. Concluding that the circuit court erred in its findings, and that Meadors's claim – that his right to free speech was violated – is without merit, we reverse and render the circuit court's judgment.

**ANALYSIS**

### I. Whether the circuit court failed to apply the proper standard of review.

¶10. The City argues that the circuit court failed to employ the appropriate standard of review and, instead, "improperly weighed and evaluated evidence and testimony that was previously determined by the Commission." Section 21-31-23 governs the disciplinary process for persons employed in civil service and specifically provides that an appeal hearing "shall be confined to the determination of whether the judgment or order of removal, discharge, demotion, suspension[,] or combination thereof made by the commission, was or was not made in good faith for cause, and no appeal to [the circuit] court shall be taken except upon such ground or grounds." Therefore, when reviewing a decision by the Commission on appeal, the standard of review is "whether or not the action of the Civil Service Commission was in good faith for cause." *Necaise v. City of Waveland*, 170 So. 3d 616, 618 (¶9) (Miss. Ct. App. 2015) (quoting *City of Vicksburg v. Lane*, 11 So. 3d 162, 165 (¶10) (Miss. Ct. App. 2009)). "Intertwined with this question is whether or not there was substantial evidence before the Civil Service Commission to support its order[,] and whether the decision is arbitrary, unreasonable, confiscatory, and capricious." *Id*.

¶11. The Commission deemed Mayor Bland's testimony – that he verbally designated Chief Lee with appointing authority – to be credible and sufficient to uphold Meadors's

5

termination. But in reversing the Commission's decision, the circuit court determined that "the evidence [was] conflicting as to whether the Mayor ever gave the proper designation to Chief Lee to terminate Meadors," and it concluded there was no "proper designation by the Mayor to Chief Lee to effectuate the termination of [Meadors]."

¶12. We agree with the City that the circuit court did not employ the proper standard of review. As this Court observed in *Renfro v. City of Moss Point*, 156 So. 3d 913, 917 (¶19) (Miss. Ct. App. 2014):

> Courts are not empowered to supervise the intelligence, wisdom, or fairness of the governing authorities. [*City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988)]. Similarly, we are prohibited from making credibility determinations of the evidence or testimony that was presented to the Commission. *City of Laurel v. Brewer,* 919 So. 2d 217, 221 (¶15) (Miss. Ct. App. 2005). Substantial evidence has been defined as such evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

Here, the circuit court made a "credibility determination" regarding the evidence it found "conflicting," likely referring to the Mayor's testimony that he designated authority to terminate Meadors, countered with the evidence presented by Meadors that the Mayor made a statement to a local news reporter that terminations have to go through the Mayor for his signature. The Commission expressly noted that "statements of public officials or political figures in news conferences are not law." Further, the Commission heard the testimony, reviewed the evidence, and determined that there was cause for Meadors's termination and "a good faith application of the disciplinary procedures." While it advised the Mayor that future designations of authority should be in writing, the Commission evidently found the Mayor's testimony that he gave verbal designation to Chief Lee credible.

6

¶13. Accordingly, we find merit to the City's claim the circuit court did not employ the proper standard of review in this instance.

> II. **Whether the circuit court misinterpreted *Eidt v. City of Natchez*, 382 So. 2d 1093 (Miss. 1980) in its findings.**

¶14. Citing *Eidt v. City of Natchez*, 382 So. 2d 1093 (Miss. 1980), the circuit court found the Mayor's failure to sign Meadors's termination notice to be dispositive in its decision to reverse the Commission's order. In *Eidt*, the Mississippi Supreme Court held that section 21-31-23 "specifically allows for discharge 'upon the written accusation of the appointing power,'" which was the City of Natchez's mayor or board of aldermen. *Id*. at 1095 (quoting Miss. Code Ann. § 21-31-23). Since the city's fire-department chief was the one who discharged the employee in *Eidt*, "without any authority or confirmation from Natchez's appointing power under the statute," the supreme court determined the employee should be reinstated. *Id*.

¶15. The City argues the circuit court misinterpreted *Eidt*, and failed to address the supreme court's subsequent holding in *Beasley v. City of Gulfport*, 724 So. 2d 883 (Miss. 1998), which distinguished *Eidt*. In *Beasley*, the supreme court considered the firing of the chief building official for the City of Gulfport. *Id*. at 884 (¶2). Louis Beasley received a termination notice on July 25, 1995, but although the original, hand-delivered letter of termination was not signed by Gulfport's mayor, a copy of the letter later produced at the Commission hearing showed the mayor subsequently signed the document on July 27, 1995. *Id*. at 885 (¶11). Despite Beasley's claim this signed notice was never mailed or received by him, the supreme court upheld the termination since the mayor, the appointing authority, had

7

"confirmed" the termination. *Id*. at 886 (¶¶13, 16). The *Beasley* court expressly distinguished *Eidt*, noting the fire chief in that case had signed the discharge "*without any authority* or confirmation *from the mayor*[.]" *Id*. at (¶15) (emphasis added).

¶16.  We find the City's claim is supported by the caselaw and evidence. It is undisputed that Mayor Bland did not sign Meadors's termination documents; thus, unlike *Beasley*, there is no written "confirmation" of the termination. However, Mayor Bland testified during the Commission hearing that he "gave [Chief Lee] verbal authority to terminate Adam Meadors."

> Q.  Okay. The notices that are already introduced into evidence are not signed by you. Did you discuss those notices with Chief Lee prior to them being delivered to Officer Adam Meadors?
>
> A.  Yes, I did.
>
> Q.  Specifically, did you discuss this matter with Chief Lee on or prior to October 13, 2013?
>
> A.  Yes, I did.
>
> Q.  . . . Did you properly authorize Chief Lee to issue the notice of intent to terminate to Officer Adam Meadors on October 13, 2013?
>
> . . . .
>
> A.  Yes, I did.
>
> . . . .
>
> Q.  And after reviewing [Meadors's response,] did you properly authorize Chief Lee to issue a final notice of termination to Adam Meadors on October 16, 2013?
>
> . . . .

A.     Yes, I did designate Chief Lee.[2]

As in *Beasley*, although Meadors was given a notice that was not signed by the Mayor, there was evidence at the hearing, which the Commission credited, that Chief Lee had "both the authority from and confirmation of his actions by the appointing authority."  Therefore, the circuit court's judgment should be reversed and rendered.

### III.     Whether Meadors's termination violated his First Amendment rights.

¶17.     As the First Amendment issue was not addressed by the circuit court, Meadors alternatively submits that the case should be remanded to address his claim that his termination violated his First Amendment right to free speech.  The City responds that this issue is not ripe for review since the circuit court did not rule on the issue.  However, as the Commission addressed this issue in its order, we will consider the claim on the merits.

¶18.     "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006).  Therefore, the first inquiry in addressing this issue is "whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech."  *Id*. at 418.

¶19.     The Commission determined: "Failing to show any public concern interest in this speech or expression[,] the First Amendment protection is not available to Meadors under

_____

[2] Counsel for Meadors objected to this questioning on the basis that the authorization was not in writing. The Commission overruled Meadors's objections.

9

these facts." We find nothing erroneous in the Commission's findings, as there was no evidence that Meadors's posting of the photo addressed a public concern. In fact, Meadors testified that the reason he posted the photo was because he "thought it was funny." Furthermore, although he denied the photo was racist, he admitted that he knew it would "ruffle some feathers." As the Commission observed, the photo, at the very least, "ridicul[ed] the Mayor and Chief of Police's humanity and[,] at worst[,] it was an expression of racial prejudice." In an analogous scenario, the United States Court of Appeals for the Eighth Circuit rejected a police officer's argument that his First Amendment right to free speech was violated when he received a thirty-day suspension for wearing "blackface" to a Halloween party attended by other off-duty officers. *Tindle v. Caudell*, 56 F.3d 966, 968-73 (8th Cir. 1995).

> While [Kevin] Tindle argues generally that his appearance at the party in blackface is "speech on a matter of public concern," he does not explain why or specify any particular matter of public concern. Whether an employee's speech addresses a matter of public concern is "determined by the content, form, and context of a given statement, as revealed by the record as a whole." Tindle does not claim he intended to comment on any issue of interest to the public. He instead intended simply to entertain the other officers and their guests at the party by wearing an amusing costume. Amusing other guests at a private party with no showing of any intended message is not speech on a matter of public concern.

*Id.* at 970. Moreover, as the United States Court of Appeals for the Second Circuit has observed:

> [T]he [g]overnment may, in some circumstances, legitimately regard as "disruptive" expressive activities that instantiate or perpetuate a widespread public perception of police officers . . . as racist . . . . Police officers . . . are quintessentially public servants. As such, part of their job is to safeguard the public's opinion of them, particularly with regard to a community's view of

10

the respect that police officers . . . accord the members of that community. . . . Where a [g]overnment employee's job quintessentially involves public contact, the [g]overnment may take into account the public's perception of that employee's expressive acts in determining whether those acts are disruptive to the [g]overnment's operations.

*Locurto v. Giuliani*, 447 F.3d 159, 178-79 (2d Cir. 2006).

¶20.    While Meadors disclaims racial intent, "[t]o suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the mere unflattering; it is degrading and humiliating in the extreme.  The use of the term 'monkey' and other similar words have been part of actionable racial harassment claims across the country." *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 911 (8th Cir. 2006) (citing *Jeffries v. Metro-Mark Inc.*, 45 F.3d 258, 260 (8th Cir. 1995) (plaintiff was called a "monkey"); *Webb v. Worldwide Flight Serv. Inc.,* 407 F.3d 1192, 1193 (11th Cir. 2005) (same); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 182 (4th Cir. 2001) (same; also "dumb monkey"); *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 910 (7th Cir. 1991) (plaintiffs were called "porch monkeys" and "baboons").  Further, in *Williams v. Phillips 66 Co.*, 72 F. Supp. 3d 938, 953 (S.D. Ill. 2014), the district court found that the posting of a "picture of a monkey with the names of two African-Americans written on it" was "without a doubt, motivated by racial animus."

¶21.    No matter his intent, Meadors's posting was inherently racially insensitive and/or demonstrated insubordination toward his superiors.  The MPD's Code of Conduct expressly provides that an employee "shall not express any prejudice concerning . . . race" and "shall not publicly criticize or ridicule the Police Department . . . by speech, writing . . . or other

11

expression, where such speech, writing . . . or other expression is defamatory[.]" Moreover, the Civil Service Code Rule Section 10.04(a)(5) states an employee may be dismissed for "being offensive or antagonistic towards supervisors[.]"

¶22. We agree with the Commission's finding that Meadors's termination over his Facebook post did not constitute a violation of his right to free speech. Meadors was not speaking on a matter of public concern, and his Facebook post could well have been viewed by the public as racist and by his superiors as "offensive or antagonistic."

¶23. **THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**