# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CC-01350-COA

**TONI HOWARD**                                                           **APPELLANT**

**v.**

**CITY OF COLUMBUS**                                                       **APPELLEE**

DATE OF JUDGMENT:                08/22/2018
TRIAL JUDGE:                     HON. JAMES T. KITCHENS JR.
COURT FROM WHICH APPEALED:       LOWNDES COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          FRANCIS STARR SPRINGER
ATTORNEY FOR APPELLEE:           JEFFREY JOHNSON TURNAGE
NATURE OF THE CASE:              CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION:                     AFFIRMED - 01/07/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     This appeal concerns a disciplinary matter against Toni Howard, a full-time police officer with the Columbus Police Department (CPD). Two separate incidents are at issue. On September 9, 2017, Officer Howard left her assigned beat without permission, and two days later she exhibited conduct unbecoming an officer and improperly used her taser around a handcuffed and shackled arrestee. Based upon the Columbus Chief of Police's recommendation, the Mayor and the Columbus City Council (City) voted unanimously to suspend Officer Howard for three working days without pay for the first incident and fourteen working days without pay for the second incident. The suspensions ran concurrently, so Officer Howard was suspended without pay for fourteen working days. The

Columbus Civil Service Commission (Commission) affirmed the City's decision on appeal. Howard appealed that decision to the Lowndes County Circuit Court, which affirmed the Commission's decision. It is from this judgment that Howard appeals. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. Toni Howard is a patrol officer with the CPD, which operates under a statutorily authorized civil service system pursuant to Mississippi Code Annotated section 21-31-1(2)(f) (Rev. 2015). Following two incidents occurring in mid-September 2017, Officer Howard received a written notice that the CPD intended to recommend to the City that she be given a seventeen-day suspension without pay based upon these two incidents. According to the notice of intent, on September 9, 2017, Officer Howard left her assigned beat for approximately one hour without permission. She was the only patrol officer assigned to that patrol area. While Officer Howard was absent, a burglary occurred on her beat. Chief Oscar Lewis recommended three working days' suspension without pay for this incident.

¶3. The second incident occurred two days later, on September 11, 2017. The notice provided that Officer Howard failed to follow police-department procedures by displaying conduct unbecoming an officer and improperly using her taser when dealing with an arrestee. Chief Lewis recommended fourteen working days' suspension without pay for this conduct.

¶4. Officer Howard exercised her rights to appear before the City, with counsel, on November 21, 2017, to answer and defend the charges. The City unanimously voted to adopt

2

Chief Lewis's recommendation but decided to have the suspensions run concurrently. Officer Howard was therefore suspended for a total of fourteen working days without pay.

¶5. Pursuant to Mississippi Code Annotated section 21-31-23 (Rev. 2015), Officer Howard appealed to the Commission for a review of the City's decision. The Commission conducted an investigation as required under section 21-31-23, which consisted of a hearing taking place on January 24, 2018. The City presented six witnesses. Officer Howard, represented by counsel, testified on her own behalf.

I.      *Incident 1 - Officer Howard's Absence from Her Assigned Beat*

¶6. The City established at the hearing that on September 9, 2017, Officer Howard was assigned to the north beat in Columbus, Mississippi. Only one officer was assigned to that area. Without obtaining permission from anyone above her in the chain-of-command, Officer Howard left her assigned beat for approximately sixty minutes to participate in training new officers on how to conduct a traffic stop. Chief Lewis testified that he had already rejected her request to be a field training officer, so Officer Howard was not authorized to participate in this training. In her absence, a burglary occurred on Officer Howard's assigned beat.

¶7. Officer Howard's immediate supervisor, Corporal Joshua Vandiver, testified that he wrote her up for neglect of duty for this misconduct. He conferred with Officer Howard about the report. Officer Howard was given the opportunity to add her own comments to the report. She signed the report without making any comments to it.

3

¶8.     Sergeant John Bishop testified that he approved the report and that there was good cause for Officer Howard to be disciplined for leaving her assigned beat. Captain Ric Higgins was the next supervisor up the chain-of-command who received the report from Sergeant Bishop.  Captain Higgins also testified that he believed there was good cause for discipline and forwarded it to Chief Lewis.  Captain Higgins believed that Chief Lewis's recommendation of three working days' suspension for this incident was made in good faith.

¶9.     Current Chief Frederick Charles Shelton was the assistant chief when Chief Lewis decided Officer Howard should be suspended.  Assistant Chief Shelton was promoted to Chief shortly before the City voted to suspend Officer Howard and testified as the Chief of Police at Officer Howard's hearing before the Commission.  He testified that he recommended Officer Howard's suspension and agreed with former Chief Lewis's length of suspension in his recommendation.  He and former Chief Lewis discussed the length of the suspension and recommended this amount because an officer must go through the proper chain-of-command to obtain permission to leave his or her beat, and Officer Howard did not do so in this case.  Further, Chief Shelton testified that in this case there was also the concern that a burglary had occurred in the north beat while Officer Howard was gone, and it may have been prevented if she had been in her assigned area.

        II.     *The Hospital Incident*

¶10.    Two days later, on September 11, 2017, the record reflects that Officer Howard drove an arrested suspect in the City's patrol car to Baptist Memorial Hospital for medical and

4

mental clearance before the arrestee could be put in the Lowndes County Adult Detention Center. Sergeant Bishop testified that another officer who was also on the scene, Officer Glenn Jenkins, told him (Sergeant Bishop) that he may want to watch Officer Howard's body-camera footage of the incident because Officer Jenkins thought "things kind of [got] out of hand at the hospital." Sergeant Bishop testified that he and Corporal Vandiver watched the video. The video was entered into evidence, and it was played for the Commission.

¶11. The video shows that the arrestee was agitated and disrespectful toward Officer Howard, and she told the arrestee to shut up a number of times. When the arrestee said he was not going to jail and this could all be "cleared up," Officer Howard told him he was going back to jail and, "You ain't clearing shit up." Then Officer Howard told the arrestee, who was handcuffed and in shackles, that she was not "taking any shit" from him, and she said that she was not "talking shit." Later in the video, the arrestee continued to be disrespectful to Officer Howard. Officer Howard deployed her taser, approached the hand-cuffed and shackled arrestee, pointed the taser in his general direction, and yelled for him to "shut-it." The record reflects that hospital employees were nearby when this occurred.

¶12. Sergeant Bishop testified that he counseled Officer Howard about this incident. She was given the opportunity to add or explain the incident description in the counseling report. She had no changes to the report, and she signed the report.

III. *Prior Incidents*

5

¶13. At the hearing, the Commission allowed testimony and documentary evidence of two prior incidents involving Officer Howard that were similar to the September 11, 2017 hospital incident. Her actions in both of these incidents were found in violation of department procedures, specifically "General Order #303.4, Disciplinary Procedures, Conduct Unbecoming An Officer." Captain Higgins testified about these two incidents, and the reports relating to these incidents were admitted into evidence. The first incident involved a counseling report served on Officer Howard in early July, 2017, which cited Officer Howard as being guilty of using rude or insulting language or conduct offensive to the public based on complaints that Officer Howard used profanity on several calls.

¶14. The second report concerned Officer Howard's conduct on July 16, 2017. According to the testimony of Captain Higgins, Officer Howard threatened to use her taser on a hospital security guard when she learned that the guard had failed to get the name of a person suspected of stealing personal property out of a hospital employee's purse. The security guard complained to the CPD about Officer Howard's actions and statements. Captain Higgins testified that he downloaded and viewed Officer Howard's body-camera data. According to Captain Higgins's report, Officer Howard is seen on the video saying that she was going to "chew him [the security guard] a new one," and that she was "fixing to tase him." The report also provided that Officer Howard said the security guard "screwed me for two cases now," and that he "botched this up big time." Officer Howard is also on the body camera video telling the guard that this is a "cluster f**k." This conduct was also found in

6

violation of General Order #303.4.

¶15.	The record reflects that after both incidents, Officer Howard was counseled and given the opportunity to add anything in her defense to the report. She did not do so in either case. Although Captain Higgins testified that he recommended a three-day suspension with respect to the July 16, 2017 incident, Officer Howard was ultimately not suspended.

IV.	*The Durations of Officer Howard's Suspensions*

¶16.	Captain Higgins testified about the relevance of these prior citations with respect to Officer Howard's fourteen-day suspension relating to the September 11, 2017 incident. He thought it was relevant that Officer Howard had received similar counseling in the past because "the reason [Officer Howard] got the number of days she did [was because these prior incidents] show[ed] a pattern of misconduct." He further testified there was good cause for Officer Howard to be disciplined for her violations, and he believed that Chief Lewis recommended the suspensions in good faith.

¶17.	Chief Shelton also testified at the hearing about the duration of Officer Howard's suspensions. He testified that he and Chief Lewis believed they needed to do something "more severe" because "prior counseling . . . was not getting the correct behavior that [they] needed. So what [they] were trying to do [was] correct [Officer Howard's] behavior to the point where she would become more productive." Chief Shelton believed the three- and fourteen-day suspensions were fair, and he specifically testified that "Officer Howard had been disciplined and counseled previous times about these incidents and [her behavior] had

7

not changed."

¶18.    The City's final witness was its human resources director, Patricia Mitchell.  She testified that the City's personnel handbook had a disciplinary action section, and that section of the personnel handbook was entered into evidence.  This section sets forth the various types of conduct that are considered "good cause" for discipline, as follows:

A.    Incompetency, inefficiency or inattention to duty
B.    Dishonesty
C.    Intemperance
D.    Immoral conduct while on duty
E.    Insubordination
F.    Discourteous treatment of the public or a fellow employee
G.    Failure to come to work and/or refusal to perform an assigned task
H.    Failure to wear required uniforms at the required times
I.    Misuse, abuse, or theft of City property
J.    Failure to follow an order or orders from your supervisor(s) and/or department head
K.    Felony convictions or actions which comprise a felonious act or acts
L.    Any other reason determined in the discretion of the Department Head to merit disciplinary action
M.    Any other act of omission or commission tending to injure public service, which includes but is not limited to, the other reasons listed herein 1(A) through 1(M).

The disciplinary action section also has a progressive list of disciplinary actions available, which include written or oral reprimand, suspension with or without pay, demotion, or dismissal.  With respect to these sanctions, this section also provides that "[a]ny disciplinary action may be suspended in whole or in part upon good behavior for up to [five] years; and . . . any combination of the listed disciplinary actions may be taken in whole or in part."

¶19.    Mrs. Mitchell testified that in a typical misconduct case the City would go from

8

written or oral reprimands to suspensions, demotions, and then termination under the City's progressive discipline policy. Mrs. Mitchell also testified that she had been at Officer Howard's hearing the whole time. She testified that under the circumstances of this case, where Officer Howard had already received two written reprimands and had been given counseling twice, it would be normal for the City to suspend the employee without pay. Regarding suspension durations, Mrs. Mitchell was the custodian of the disciplinary action records and therefore knows how long officers are suspended in their cases. She testified that Officer Howard's disciplinary action did not seem significantly different than other suspensions, and there had been other occasions where officers received fourteen days and more for conduct that had been repeatedly addressed.

¶20. Mrs. Mitchell also testified that she was present when the City deliberated on Officer Howard's disciplinary action. She heard no discussion that could lead to a conclusion that Officer Howard's disciplinary action was for political or religious reasons. She believed that the punishment was given in good faith and for cause. Mrs. Mitchell noted that the City allowed the three-day suspension for the first incident to run concurrently with the fourteen days for the hospital incident, which reduced the suspension requested by the Chief of Police by three days. She believed that this was a good-faith gesture and that the City's good faith was also demonstrated when the City agreed, at her counsel's request, to allow Officer Howard to serve her suspension after the Christmas holidays. On cross-examination, Mrs. Mitchell testified that the department head makes the recommendation for a suspension

9

duration, as someone who works with the employee on a day-to-day basis.

V.  *Officer Howard's Testimony*

¶21.  Officer Howard testified on her own behalf and described the September 9 and 11, 2017 incidents.  She did not deny that either incident took place, and, with respect to the September 9 incident, she admitted that she was not given permission to leave her beat that day.  Regarding the September 11 hospital incident, Officer Howard admitted that her conduct violated the general orders and procedures of the police department.

¶22.  At the Commission hearing, the City's lawyer asked Officer Howard whether she had any evidence or testimony to offer "the Commissioners that [she] was disciplined without good cause."  Officer Howard responded:

> [HOWARD:]  I mean, to be perfectly honest, I just feel like 14 days was a little excessive for the incident. Had it been less time, then I wouldn't have had a problem with it, but a month -- a month is excessive; especially considering an individual was punished for something before me, the chief recommended 7 days.
>
> [THE CITY:]  Okay. So you agree with the punishment, just not the amount of punishment?
>
> [HOWARD:]  Yes, sir.

Although Officer Howard testified that she had seen others given less time, she offered no evidence or testimony about the circumstances surrounding the actions at issue in any other case.  Officer Howard admitted that she had no evidence or testimony to offer that demonstrated the City had acted in bad faith, or even whether the City knew her political or

religious affiliation.

VI.    *The Commission's Decision*

¶23.    In its order dated January 24, 2018, the Commission affirmed Officer Howard's suspension, as follows:

> The burden was upon Officer Howard to demonstrate that the Mayor and Council acted for political or religious reasons when they voted to suspend, or to show that the decision to suspend was not in good faith and for cause. It is the opinion of the Commission that Officer Howard failed to demonstrate a lack of good faith on the part of the Mayor and City Council or that there was a lack of cause for her suspension. There has been no evidence whatsoever tending to show that the Mayor and City Council acted for political or religious reasons. The Commission does not find that the Mayor or the Council acted in bad faith, and finds instead that the Mayor and Council voted in good faith. The good faith of the Council is reflected in the fact that the Mayor and Council voted as they did and combined the two punishments and delayed implementation for Officer Howard's convenience. This is persuasive evidence that the Mayor and Council deliberated in good faith and reached its decision that good cause existed to grant the Chief's request for the suspension.

¶24.    Officer Howard appealed the Commission's decision to the Lowndes County Circuit Court.  The record reflects that the circuit court affirmed the Commission's decision after reviewing the file and hearing oral arguments from counsel.[1]  Officer Howard appeals, asserting that her suspensions should be reversed because their durations were improperly decided and imposed in an arbitrary and capricious manner.

**STANDARD OF REVIEW**

---

[1] In its order, the circuit court delineated the legal standards applicable to its review. These standards are relevant to the issue raised by Officer Howard in this appeal.  Thus, to avoid repetition, these standards will be discussed below.

11

¶25.    In *City of Vicksburg v. Lane*, 11 So. 3d 162 (Miss. Ct. App. 2009), this Court set forth the standards of review applicable in this case.  Pursuant to section 21-31-23, "[t]he civil service commission reviews the employment decisions of a city to remove, suspend, demote, or discharge a civil service employee." *Lane*, 11 So. 3d at 164 (¶10) (citing Miss. Code Ann. § 21-31-23).  "A commission is authorized to reverse a city's disciplinary action if it was made for political reasons, religious reasons, or was not made in good faith for cause." *Id.*

¶26.    A Commission's decision may be appealed to the appropriate circuit court.  *Id.*  "On appeal, the circuit court's standard of review is limited to determining whether the act of the commission was or was not made in good faith for cause." *Id*.

¶27.    This Court is bound by the same appellate standard of review, as the Mississippi Supreme Court has explained:

> [T]he question before [the appellate court] is whether or not the action of the Civil Service Commission was in good faith for cause.  Intertwined with this question is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether it is arbitrary, unreasonable, confiscatory, and capricious.

*City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988) (quoting *City of Meridian v. Hill*, 447 So. 2d 641, 643 (Miss. 1984)); *accord City of Meridian v. Meadors*, 222 So. 3d 1045, 1048 (¶10) (Miss. Ct. App. 2016).  The supreme court emphasized the limited scope of review of this Court and the circuit court, as follows:

> It is thus clear that the scope of review of the circuit court, and of this Court, is limited, and we must ever bear in mind that it is not what the court, had it been a member of the governing authority, might have done in a particular instance, or indeed whether or not the court thinks a mistake may have been

12

made, but instead the criterion is whether or not from an examination of the record there exists credible evidence substantiating the action taken by the city. It is upon this basis that the court determines whether or not the decision was in "good faith for cause." . . . It is only when the record makes it clear that there is no "substantial evidence" supporting the governing authorities' determination that a court can act, and in such case it must.

*Froshour*, 530 So. 2d at 1355.

## DISCUSSION

¶28.   Officer Howard specifically states in her brief that she does not seek reversal "on the merits of the accusations [against her]."  Rather, Officer Howard asserts that because the City's disciplinary policy does not contain any guidance on suspension durations that may be imposed for particular conduct, her suspensions' durations were imposed in an arbitrary and capricious manner and thus should be reversed.

¶29.   Bearing in mind our limited standard of review, we observe that "'[s]o long as substantial evidence exists, an agency's finding must be allowed to stand even though there might be room for disagreement on that issue.'" *Breland v. City of Hattiesburg*, 276 So. 3d 1217, 1221 (¶12) (Miss. Ct. App. 2018) (quoting *Miss. Pub. Serv. Comm'n v. Merchants Truck Line Inc.*, 598 So. 2d 778, 782 (Miss. 1992)).  "Substantial evidence means something more than a mere scintilla or suspicion," *id*. (internal quotation marks omitted), and "[i]f a decision is one which could be considered fairly debatable, then it could not be considered arbitrary or capricious." *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1281 (Miss. 1992) (internal quotation marks omitted).  In contrast, "[a]n administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will

13

alone." *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (¶13) (Miss. 1999). Similarly, "[a]n action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id.*

¶30. Based on our review of the record and the applicable standard of review, we find that Officer Howard's suspensions-without-pay, and their durations, which the City allowed to run concurrently, are supported by substantial evidence. Regarding the first incident, Officer Howard admitted at the Commission hearing that she did not have permission to leave her assigned beat, nor was she even approved to be a field training officer. As for the hospital incident, Officer Howard admitted that the language she used with the arrestee was a violation of the general orders and the procedures of the CPD. Indeed, she had been counseled twice in the recent months before the September 11, 2017 incident about her abusive language and use of profanity. The record also reflects that Officer Howard inappropriately deployed her taser with hospital employees nearby and in violation of the CPD's general orders and procedures regarding taser usage.

¶31. Officer Howard presented no evidence that the City acted in bad faith or that she was disciplined for political or religious reasons—she admitted that she did not believe the City even knew her political leanings or religious affiliation. On the contrary, the record reflects that the Chief of Police and the police officers in Officer Howard's chain-of-command all believed that the punishment was issued in good faith, for cause, and not for political or

14

religious reasons. We find that these circumstances constitute substantial evidence supporting the City's decision to suspend Officer Howard without pay, that it was not done in bad faith or for political or religious reasons, and that the Commission's decision affirming the City's sanctions against Officer Howard was made "in good faith for cause." *Froshour*, 530 So. 2d at 1355; *Meadors*, 222 So. 3d at 1048 (¶10).

¶32. We also find that the City's personnel handbook affords proper guidance in imposing sanctions and that substantial evidence supports the durations of the concurrently running suspensions imposed in this case. The disciplinary-action section of the personnel handbook details various types of conduct considered "good cause" for discipline, and that section provides a progressive list of disciplinary actions available, which include written or oral reprimand, suspension with or without pay, demotion, or dismissal.

¶33. Officer Howard acknowledges that these provisions are in the personnel handbook, but she asserts that because the handbook lists no suspension terms, this allows for suspension durations to be determined in an "entirely subjective" and an "arbitrary and capricious" manner. We disagree. We find that by providing a detailed description of behavior warranting discipline and setting forth a progressive list of available sanctions, the City's personnel handbook provides sufficient guidelines for the City to perform its disciplinary function. Although the City is vested with a certain amount of discretion in disciplinary matters under these guidelines, we find that this discretion is both necessary and appropriate because it allows the City to effectively fashion sanctions for the widely varying

15

circumstances and professional misconduct that it must address in each particular situation before it.

¶34. In addition to our determination that the City's personnel handbook furnishes adequate standards for the implementation of the City's disciplinary procedures, we also find that there is substantial evidence supporting the suspension durations imposed in this case. Regarding the first incident, Officer Howard's three-day suspension is certainly substantiated by the fact that she left her assigned beat without permission and participated in officer training when she was not even approved to be a field training officer. In any event, this suspension ran concurrently with Officer Howard's fourteen-day suspension for the hospital incident.

¶35. With respect to the hospital incident, Captain Higgins explained during his testimony that Officer Howard got a fourteen-day suspension because the prior July incidents showed a pattern of misconduct. Similarly, Chief Shelton testified that he and Chief Lewis believed they needed to do something "more severe" to sanction Officer Howard for her conduct because "prior counseling . . . was not getting the correct behavior that [they] needed. So what [they] were trying to do [was] correct [Officer Howard's] behavior to the point where she would become more productive." Further, Chief Shelton testified that he believed that the three- and fourteen-day suspensions were fair. As Chief Shelton also pointed out, "Officer Howard had been disciplined and counseled previous times about these incidents and [her behavior] had not changed."

¶36. Additionally, the City's human resources director, Mrs. Mitchell, testified that a

16

suspension without pay would be typical under the circumstances in Officer Howard's case because she had already received two written reprimands and had been given counseling twice. Mrs. Mitchell, as the custodian of all disciplinary records, also testified that Officer Howard's suspensions did not seem significantly different from other suspensions and that there had been other occasions where conduct had been repeatedly addressed that the officer received a fourteen-day suspension or more. Finally, we observe that although Officer Howard testified that she had seen other officers given less time than the suspensions against her, she offered no evidence or testimony about who these officers were nor the circumstances surrounding the actions at issue in any other case.

¶37. In sum, the City suspended Officer Howard for three and fourteen working days without pay, with these suspensions to run concurrently, for the two incidents at issue in this case. We find that the Commission's decision to affirm the City's order was made in good faith and for cause, and substantial evidence supports the Commission's decision to do so. We therefore affirm the circuit court's judgment affirming the Commission's order.

¶38. **AFFIRMED.**

**J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. BARNES, C.J., NOT PARTICIPATING.**

17