# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CC-01346-COA

**TYLER CONWILL**                                                        **APPELLANT**

**v.**

**CITY OF COLUMBUS, MISSISSIPPI**                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/22/2018 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | FRANCIS STARR SPRINGER |
| ATTORNEYS FOR APPELLEE: | JEFFREY JOHNSON TURNAGE |
| | MICHAEL D. CHASE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 03/03/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., TINDELL AND McDONALD, JJ.

### CARLTON, P.J., FOR THE COURT:

¶1.     Tyler Conwill, a former police officer with the Columbus Police Department (CPD), was terminated from employment after he was involved in four motor-vehicle accidents, within less than a one-year period, while driving a CPD patrol car. Conwill admits fault with respect to all four accidents. After the Mayor and the Columbus City Council (City) voted unanimously to terminate Conwill pursuant to the City's motor vehicle accident policy, Conwill appealed to the Columbus Civil Service Commission (Commission), which affirmed the City's decision. Conwill appealed that decision to the Lowndes County Circuit Court, which affirmed the Commission's decision. It is from this decision that Conwill appeals, asserting that the City's vehicle-accident policy is too vague and that his termination was

imposed in an arbitrary and capricious manner. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. Tyler Conwill is a former patrol officer with the CPD, which operates under a statutorily authorized civil service system pursuant to Mississippi Code Annotated section 21-31-1(2)(f) (Rev. 2015). Between August 17, 2016, and June 12, 2017, Conwill was involved in four motor-vehicle accidents while driving a CPD patrol car. He admits fault for all four accidents. Pursuant to the City's accident review board's findings, the chief of police gave Conwill notice of intent to recommend his discharge because of the repeated accidents. Conwill then exercised his right to appear before the City to answer the charges. Following that appearance, the City voted unanimously to terminate Conwill's employment. Conwill appealed to the Commission pursuant to Mississippi Code Annotated section 21-31-23 (Rev. 2015) for a review of the City's decision to terminate his employment. The Commission conducted an investigation, which included an evidentiary hearing and a review of documentary evidence submitted at the hearing.

¶3. Conwill, Chief of Police Fred Shelton, and Fire Chief Martin Andrews, who was a member of the accident review board during the relevant period, testified at the February 19, 2018 Commission hearing. Their testimonies and the documentary evidence concerning each accident submitted at the hearing established the circumstances surrounding Conwill's four accidents.

¶4. The record reflects that Conwill had his first accident on August 17, 2016. He took his eyes off the road to look at a street address and failed to stop before hitting a car in his

2

lane that had stopped to yield to an oncoming ambulance. The property damage associated with this case was $904.80.

¶5. Conwill's second accident happened on February 5, 2017, when Conwill drove his car into a parked trailer owned by the Lowndes County Sheriff's Department, causing damage to both the car and the trailer. The record does not show the cost to repair the damage.

¶6. On May 16, 2017, Conwill's patrol car collided head-on with another vehicle, causing over $8,000 of damage to the patrol car and over $6,000 of damage to the other vehicle. The report from that accident shows that the impact occurred in the oncoming lane. At the Commission hearing, Conwill did not dispute the accuracy of the accident report, and he testified, "I'm taking fault for [the accident]." In an effort to explain the circumstances, Conwill testified that he was not able to actually tell if he was in the oncoming lane because the road did not have a center line and because the radar unit on the dashboard of his patrol car was in the way. This was Conwill's third accident.

¶7. As the record reflects, less than a month later on June 12, 2017, and before the review board had conducted a review of the May 16 accident, Conwill had a fourth accident in which he rear-ended another vehicle with his patrol car, causing approximately $3,400 of damage to the patrol car. The record does not reflect the cost to repair the damage to the other vehicle. Conwill's vehicle rolled into another vehicle that had re-stopped at a stop sign when the driver apparently decided it was not yet safe to proceed. As noted, Conwill admitted fault with respect to each accident.

¶8. As part of the City's personnel manual, the City has adopted guidelines for

3

disciplinary action against employees who cause motor-vehicle accidents while driving in the course of their employment. These guidelines were admitted as an exhibit at the Commission hearing and are attached to this opinion as an appendix.

¶9.     The personnel manual sets out the procedures to be followed in assessing fault and determining the prescribed disciplinary action for a particular motor-vehicle accident. Briefly stated, accidents are investigated by an accident review board, which is charged with determining whether an employee was at fault and the severity of the accident in terms of property damage. After its investigation, the accident review board makes its recommendation to the employee's department head regarding disciplinary action under the "Guidelines for Chargeable Accidents Within A Five Year Period" (Guidelines), which are also set forth in the City's personnel manual.

¶10.    The Guidelines set out the various disciplinary actions that may be imposed for vehicular accidents. Under the Guidelines, the disciplinary action imposed for a particular accident depends on (1) the severity of the accident in terms of the amount of property damage caused by that accident and (2) the number of prior chargeable accidents. The Guidelines identify five categories of accidents based on the amount of property damage caused by the accident (categories A–E). Within each category, different disciplinary actions are specified based on the employee's at-fault accidents during the preceding five-year period.

¶11.    Fire Chief Andrews testified about the board's actions with respect to Conwill's accidents. He explained in his testimony that the accident review board did not investigate

4

the third accident until after the fourth accident had occurred a month later. He testified that the reason this happened was because there had been a delay in obtaining the information about the property damage incurred in Conwill's third accident. For this reason, the accident review board considered the third and fourth accidents at the same proceeding. A "Notice of Intent to Terminate" was issued following the accident review and was sent to Conwill's lawyer on November 29, 2017.

¶12. As noted above, the third accident that Conwill caused resulted in property damage to both vehicles totaling over $10,000. Conwill admitted at the Commission hearing, and both Police Chief Shelton and Fire Chief Andrews testified, that this accident was in violation of category E(3) of the Guidelines and was grounds for termination under that provision. Fire Chief Andrews specifically testified that because the penalty for the third accident was dismissal, action was not taken on the fourth accident.[1] Police Chief Shelton testified that he recommended to the City that Conwill be terminated, and the City voted unanimously to terminate Conwill's employment. Following the hearing, the Commission issued an "Order and Judgment" affirming the City's decision, finding that the City had acted in good faith and that the City had terminated Conwill for good cause. Conwill appealed from the Commission's Order and Judgment to Lowndes County Circuit Court, which heard oral argument on August 20, 2018, and entered an order on August 22, 2018, affirming the Commission's ruling. Conwill appeals.

---

[1] At the Commission hearing, the lawyer for the City explained that there was an error in the Notice of Intent to Terminate where it provided in paragraph three that Conwill received "a written reprimand" for the third accident. Conwill actually received a notice of intent to terminate for the third accident.

**STANDARD OF REVIEW**

¶13.    In *City of Vicksburg v. Lane*, 11 So. 3d 162 (Miss. Ct. App. 2009), this Court set forth the standards of review applicable in this case.  Pursuant to section 21-31-23, "[t]he civil service commission reviews the employment decisions of a city to remove, suspend, demote, or discharge a civil service employee." *Lane*, 11 So. 3d at 164 (¶10) (citing Miss. Code Ann. § 21-31-23).  "A commission is authorized to reverse a city's disciplinary action if it was made for political reasons, religious reasons, or was not made in good faith for cause." *Id.*

¶14.    A Commission's decision may be appealed to the appropriate circuit court. *Id.*  "On appeal, the circuit court's standard of review is limited to determining whether the act of the commission was or was not made in good faith for cause." *Id*.

¶15.    This Court is bound by the same appellate standard of review, as the Mississippi Supreme Court has explained:

> [T]he question before [the appellate court] is whether or not the action of the Civil Service Commission was in good faith for cause.  Intertwined with this question is whether or not there was substantial evidence before the Civil Service Commission to support its order and whether it is arbitrary, unreasonable, confiscatory, and capricious.

*City of Jackson v. Froshour*, 530 So. 2d 1348, 1355 (Miss. 1988) (quoting *City of Meridian v. Hill*, 447 So. 2d 641, 643 (Miss. 1984)); *accord City of Meridian v. Meadors*, 222 So. 3d 1045, 1048 (¶10) (Miss. Ct. App. 2016).  The supreme court emphasized the limited scope of review of this Court and the circuit court, as follows:

> It is thus clear that the scope of review of the circuit court, and of this Court, is limited, and we must ever bear in mind that it is not what the court, had it been a member of the governing authority, might have done in a particular instance, or indeed whether or not the court thinks a mistake may have been

6

made, but instead the criterion is whether or not from an examination of the record there exists credible evidence substantiating the action taken by the city. It is upon this basis that the court determines whether or not the decision was in "good faith for cause." . . . It is only when the record makes it clear that there is no "substantial evidence" supporting the governing authorities' determination that a court can act, and in such case it must.

*Froshour*, 530 So. 2d at 1355.

## DISCUSSION

¶16. Conwill asserts that the City's Guidelines are so vague that it is "virtually impossible to objectively follow [them]." Conwill further asserts that the City's decision to terminate him under the Guidelines was arbitrary and capricious and without "good cause." We first address Conwill's vagueness assertion.

¶17. Although Conwill does not specifically assert that the City's vehicle-accident policy is so vague so as to constitute a violation of his due process rights, we look to the caselaw addressing analogous issues for guidance. The Mississippi Supreme Court addressed the applicable standard in analyzing whether guidelines or regulations are impermissibly vague in *Molden v. Mississippi State Department of Health*, 730 So. 2d 29 (Miss. 1998). In that case, the Mississippi Supreme Court held that the same analysis applied in assessing a vagueness claim in the Mississippi state courts is that set forth by the United States Supreme Court in *Roth v. United States*, 354 U.S. 476 (1957), as follows: "[T]he Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Molden*, 730 So. 2d at 39-40 (¶24) (internal quotation marks omitted) (quoting *Roth*, 354 U.S. at 491).

7

¶18. We find that the City's Guidelines are not vague under this test. As described above, the Guidelines set forth five categories of accidents based on the amount of property damage caused by the accident (categories A–E). Within each category, different disciplinary actions are set forth based upon the number of at-fault accidents the employee has had within the preceding five years. For example, Conwill's third accident, which is the basis for his dismissal, resulted in property damages to both vehicles amounting to over $10,000. Conwill was terminated under category E(3) of the Guidelines, which plainly provides:

> E. *$10,000.01 and up damage to City vehicle and other property*[:]
>
> 1. 1st Offense - Three (3) to seven (7) days suspension without pay
>
> 2. 2nd Offense - Seven (7) to fifteen (15) days suspension without pay
>
> 3. *3rd Offense - Dismissal*[.]

(Emphasis added).

¶19. Both Police Chief Shelton and Fire Chief Andrews testified that the City interprets the Guidelines as providing that when an employee is at fault for an accident, the prescribed disciplinary action is determined by the property-damage category applicable to the accident and the number of chargeable accidents of the particular category. Moreover, despite his assertion that the Guidelines are vague, Conwill's *own* testimony at the Commission hearing evidenced that he understood the Guidelines and interpreted them in the same way that the City applied them, as follows:

> [CITY'S
> COUNSEL:]        All right, sir. If you would, look back to the guidelines

8

for chargeable accidents, Tab A.

[CONWILL:]    (Perusing document). . . .

[CITY'S
COUNSEL:]    If the Amory accident was your third accident, correct, in a five-year period— . . .

[CONWILL:]    Yes, sir.

CITY'S
COUNSEL:]    —and the damage was $10,000 and up, correct—

[CONWILL:]    Yes, sir.

CITY'S
COUNSEL:]    —that being your third offense, what [do] the guidelines provide for?

[CONWILL:]    It says dismissal on there. It says 10,000 and up damages to city vehicle and other property, first offense, second offense, third offense. Third offense would be dismissal.

¶20.    When questioned by his own lawyer, Conwill also demonstrated that he understood the Guidelines, as follows:

[CONWILL'S
COUNSEL:]    Okay. So would it be fair to say that, under [Paragraph] A, if you had three accidents, under $500 in damage, that would be a one-day suspension?[2]

---

[2] Category A of the Guidelines provides:

A.    Under $500.00 damage to City vehicle and other property[:]

    1.    1st Offense - Oral reprimand and written entry

    2.    2nd Offense - Written reprimand

    3.    3rd Offense - One (1) day suspension without pay[.]

[CONWILL:] Yes, sir.

[CONWILL'S
COUNSEL:] What if you had a fourth, that went into $5,001? What
would be the punishment there?

[CONWILL:] A fourth of $5001? Be dismissal.[3]

¶21. We find that the City's vehicle-accident policy and Guidelines provide "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Molden*, 730 So. 2d at 39-40 (¶24). The Guidelines, on their face, are clearly sufficient to give warning to Conwill that a third at-fault accident with property damages in excess of $10,000 would result in his dismissal. Conwill himself testified that this is how he interpreted the Guidelines. We find no merit in Conwill's assertion that he should be reinstated because the Guidelines are impermissibly vague.

¶22. Conwill also asserts that the City's decision to terminate him was arbitrary and capricious and without "good cause." Bearing in mind our limited standard of review, we observe that "[s]o long as substantial evidence exists, an agency's finding must be allowed

---

[3] Category D of the Guidelines provides:

D. $5,000.01 - $10,000.00 damage to City vehicle and other property[:]

1. 1st Offense - One (1) to three (3) days suspension without pay

2. 2nd Offense - Three (3) to seven (7) days suspension without pay

3. 3rd Offense - Seven (7) to fifteen (15) days suspension without pay

4. 4th Offense - Dismissal[.]

10

to stand even though there might be room for disagreement on that issue." *Breland v. City of Hattiesburg*, 276 So. 3d 1217, 1221 (¶12) (Miss. Ct. App. 2018) (internal quotation marks omitted) (quoting *Miss. Pub. Serv. Comm'n v. Merchants Truck Line Inc.*, 598 So. 2d 778, 782 (Miss. 1992)). "Substantial evidence means something more than a mere scintilla or suspicion," *id.* (internal quotation marks omitted), and "[i]f a decision is one which could be considered fairly debatable, then it could not be considered arbitrary or capricious." *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1281 (Miss. 1992) (internal quotation marks omitted). In contrast, "[a]n administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (¶13) (Miss. 1999). Similarly, "[a]n action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id.*

¶23. Based on our review of the record and the applicable standard of review, we find that Conwill's termination is supported by substantial evidence. Conwill's third accident resulted in property damage to both vehicles totaling over $10,000. He admits he was at fault. As we have addressed above, his conduct plainly falls within category E(3) of the Guidelines, which requires dismissal when an employee is at fault in a vehicle accident totaling over $10,000 in property damage and when it is that employee's third accident within the preceding five years.

¶24. Conwill asserts that "the record clearly indicates that [the Guidelines] were not

11

followed in this case." We do not agree with this assertion. As we have addressed above, based upon Conwill's *own* reading of the Guidelines, his third accident violated category E(3) and the penalty for a "[t]hird offense would be dismissal."

¶25. It appears that Conwill may be asserting that the City did not follow its own guidelines because he was terminated after his fourth accident, rather than his third accident, and because paragraph 3 of his Notice of Intent to Terminate, which relates to his third accident, provides that the discipline for that accident was a written reprimand, not dismissal. From these contentions, Conwill asserts that "[t]he only conclusion that could be made is [that the] City totaled all accidents together to get [the property damage] number" that led to his dismissal. According to Conwill, in allegedly doing so, the City ignored the Guidelines, and the decision to dismiss him was not made in good faith.

¶26. We find no merit in these assertions. First, the record reflects that the City's lawyer clarified at the Commission hearing that the reference to a "written reprimand" in paragraph three of the Notice of Intent to Terminate, relating to Conwill's third accident, was an error in that document. As the City's lawyer explained, "[w]hat [Conwill] got was [a] notice of intent to terminate," as confirmed by Conwill's own testimony and the testimony of Fire Chief Andrews.

¶27. Second, both Police Chief Shelton and Fire Chief Andrews testified that the basis for Conwill's dismissal was his third accident, which violated category E(3) of the Guidelines. We find no evidence in the record at all that the City "totaled all accidents together to get [the property damage] number" to support its decision to terminate Conwill.

12

¶28. Third, the record reflects that the timing of Conwill's dismissal was due to a paperwork issue and not due to any misinterpretation of the Guidelines by the accident review board or the City. Conwill had his fourth accident less than a month after his third accident. Fire Chief Andrews explained in his testimony that the accident review board did not investigate the third accident until after the fourth accident happened because there was a delay in obtaining the information about the resulting property damage from Officer Conwill's third accident. For this reason, the accident review board considered the third and fourth accidents at the same proceeding—and termination was recommended based upon Conwill's third accident and in accordance with category E(3) of the Guidelines. As Fire Chief Andrews testified, "We decided termination on the third accident. That's the reason no action was taken on the fourth chargeable accident because . . . the third accident supersede[d] [it][, and] . . . you can't fire him twice. You can only dismiss him once. That's what we went by."

¶29. Conwill did not present any evidence that the discipline he received, i.e., termination, was inconsistent with the stated Guidelines or that it was inconsistent with discipline imposed in other cases. Conwill also did not present any evidence that the City acted in bad faith or that he was disciplined for political or religious reasons. We find that there was substantial evidence supporting the City's decision to terminate Conwill after his third accident totaling over $10,000. We further find that Conwill's termination was not done in bad faith or for political or religious reasons, and that the Commission's decision affirming the City's decision to terminate Conwill was made "in good faith for cause." *Froshour*, 530 So. 2d at

1355; *Meadors*, 222 So. 3d at 1048 (¶10). For all these reasons, we affirm the circuit court's judgment affirming the Commission's order.

¶30. **AFFIRMED.**

**J. WILSON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. BARNES, C.J., NOT PARTICIPATING.**

**APPENDIX**

## GUIDELINES FOR CHARGEABLE ACCIDENTS WITHIN A FIVE (5) YEAR PERIOD

There shall be no variance from these guidelines unless special circumstances are found and set forth in writing and attached to the Review Board's recommendation.

A. Under $500.00 damage to City vehicle and other property
   1. 1st Offense – Oral reprimand and written entry
   2. 2nd Offense – Written reprimand
   3. 3rd Offense – One (1) day suspension without pay

B. $500.00 – $1,000.00 damage to City vehicle and other property
   1. 1st Offense – Oral reprimand with written entry or written reprimand
   2. 2nd Offense – One (1) day suspension without pay
   3. 3rd Offense – Three (3) to seven (7) days suspension without pay

C. $1,000.01 - $5,000.00 damage to City vehicle and other property
   1. 1st Offense –Written reprimand
   2. 2nd Offense – One (1) to seven (7) days suspension without pay
   3. 3rd Offense – Three (3) to seven (7) days suspension without pay

D. $5,000.01 - $10,000.00 damage to City vehicle and other property
   1. 1st Offense – One (1) to three (3) days suspension without pay
   2. 2nd Offense – Three (3) to seven (7) days suspension without pay
   3. 3rd Offense – Seven (7) to fifteen (15) days suspension without pay
   4. 4th Offense – Dismissal

E. $10,000.01 and up damage to City vehicle and other property
   1. 1st Offense – Three (3) to seven (7) days suspension without pay
   2. 2nd Offense – Seven (7) to fifteen (15) days suspension without pay
   3. 3rd Offense – Dismissal



EXHIBIT

A

-83-

15